STERLING ELLIOTT & others *vs.* LORENZO D. BAKER & others.

Suffolk.    December 6, 7, 1906. — March 1, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Equity Pleading and Practice,* Memorandum of findings.  *Corporation.  Equity Jurisdiction,* To cancel corporate shares wrongfully issued.

On an appeal in equity, where the evidence has been taken by a commissioner, a memorandum of findings of fact filed by the justice who heard the case is a part of the record and such findings will not be set aside unless they are plainly wrong.

If in a contest for the control of a corporation a majority of the directors of the corporation sell and issue a large number of shares held in the treasury of the company to a person on their side of the controversy, which with the shares already held and controlled by them will give them control of the corporation, and if the issuing of the shares is not reasonably necessary to raise money to be used in the business of the corporation but the majority of the directors issue the shares in pursuance of a secret arrangement between them and the purchaser of the shares for the purpose of ousting the leader of the opposing party who before such issue had acquired with his friends the control of the outstanding stock of the company, and if the price paid for the new shares while fair under ordinary circumstances is less than probably might have been obtained in view of the contest for the control of the corporation, although the majority of the directors believe that it is for the best interests of the corporation that its control should be in their hands, their action in issuing the shares is in excess

of their authority and constitutes a breach of trust, and in a suit in equity brought by the opposing stockholders the court will order the cancellation of the certificate for the new shares and the return of the shares to the treasury of the corporation.

The directors of a corporation act in a strictly fiduciary capacity and are held to the high standard of duty required of trustees.

RUGG, J. This is a suit in equity brought by the plaintiffs as stockholders of the Elliott Company in behalf of themselves and all other stockholders, who may desire to join as plaintiffs, to compel the return to the corporation and the cancellation of a certain certificate for nine hundred shares of its capital stock. The justice of this court, before whom the case was tried, filed a memorandum, which includes a report of his findings of fact. Such a memorandum is a part of the record, and its findings stand upon the same basis as those contained in a report and will not be set aside unless they are plainly wrong. *Cohen* v. *Nagle*, 190 Mass. 4. A decree was entered for the plaintiffs, and, the evidence having been taken by a commissioner, the whole case is brought before us on appeal.

The material findings of fact are that there was a contest between two factions among its stockholders for the control of the Elliott Company, a Maine corporation, having its principal place of business in Boston. In April, 1904, the plaintiff Elliott with his friends bought sufficient of the outstanding stock to give them control of the. company. The defendant Nickerson, who was in Colorado, returned to Boston, and, learning of this fact, arranged with a majority of the board of directors, who were his friends, to issue for $13 a share, to the defendant Foster, nine hundred shares of stock, owned by and held in the treasury of the company, which, if Foster voted with the Nickerson faction, would give it the control of the corporation. The justice has found that this was not issued in good faith by the directors voting therefor, but to enable Nickerson and his friends to oust Elliott and his friends from the control and give the control to Nickerson; that it was not reasonably necessary to issue the stock to raise money to be used in the business; and that the price, at which the stock was issued to the defendant Foster, while ordinarily fair, was less than probably could have been obtained in view of the peculiar condition of affairs, if other directors and stockholders had been

allowed to bid. The company thus received less money for it than might have been procured. The stock so issued to Foster was a part of stock formerly issued to Elliott, in payment of certain patents transferred by him to the company, and by him returned into the treasury of the corporation to be disposed of for its benefit in such way and for such price or purpose as the directors might determine. It was contended that this circumstance made a difference as to the rights and obligations of the directors in disposing of it. The justice ruled that this contention was unsound; that the directors were bound to dispose of the stock in good faith and for the best interests of the corporation and, having found as a fact that they did not so dispose of it, that they exceeded their authority in issuing the stock. He found as a further fact that there was a secret understanding or arrangement between the defendants Foster and Nickerson and one Lamson as to the control of the corporation at the time the stock was issued and that the defendant Foster was in some way cognizant of the purpose for which the stock was issued and a party to it. He further ruled that if the directors did not issue the stock in good faith and its issue was not required by the condition of the corporation or reasonably necessary for the proper prosecution of its business, but it was issued to oust Elliott and his friends and to give Nickerson and his friends control, and if Foster was cognizant of and a party to such purpose, then, even though the directors believed that it would be for the best interests of the corporation to have the control in the hands of Nickerson and his friends, their conduct would constitute a breach of trust and the issuing of the stock would be in excess of their authority and a certificate would be invalid in the hands of Foster, notwithstanding he paid what would have been a fair price for the stock under ordinary circumstances. The questions raised are whether the findings of fact are plainly wrong upon the evidence reported, and as to the correctness of the rulings.

This is peculiarly a case for the application of the rule that the justice who hears the witnesses has opportunities for testing their reliability and veracity which no appellate tribunal can acquire. It is stated in the memorandum of the justice that he " cannot believe, though it is denied by all of them, that there

was not some secret understanding or arrangement between Lamson, Foster and Nickerson in regard to the situation." This finding must have been based not alone upon what was said, but upon a scrutiny of the witnesses, inferences drawn from their appearance, and the atmosphere they created in testifying, which cannot be reproduced in a printed report. A careful examination of all the evidence demonstrates, however, that not only was this finding not plainly wrong but amply warranted. It had been the policy of the company, as stated in its annual report, to keep the issue of stock as low as possible. The company had been increasing its earnings with almost phenomenal rapidity. No reason had been suggested by any of the executive officers of the company why the capital in May, 1905, should have been increased, until, immediately upon its being known that Elliott was trying to buy in the market or perhaps had secured a controlling interest in the stock, one director returns hurriedly from Colorado to Boston, another is summoned by cable from Jamaica, and, as soon as the three constituting a bare majority can get together in Boston, a secret meeting is held at the Parker House. Of this gathering the plaintiff and his friend upon the directorate were given no intimation. It is said to have been then determined that the company needed a larger working capital, although the excess of quick assets over liabilities as shown by the books of the company on April 30, 1905, was $28,538 as against $16,708 on the last day of the previous December. The details of a scheme were planned for issuing to Foster the nine hundred shares of stock owned by the company and held in its treasury. Elaborate preambles and votes were prepared (for use at the meeting of directors to be called as soon as practicable) looking to the election of one of the Nickerson faction in place of Elliott as president, and setting forth the desirability of having Foster as a stockholder and of procuring more money for the company. A meeting of the directors, to be held two or three days later, for the purpose of issuing this stock, was arranged. Foster, not having the ready money with which to purchase the stock, borrowed it through some intermediaries directly from Nickerson, and was present in an outer room, while the meeting of the directors was being held, at which the vote was passed for the

issuance of the stock to him. The meeting was held after usual bank and court hours. Notwithstanding the protest by two of the five directors against the proceedings, and against issuing any stock without giving to all directors and stockholders an opportunity to purchase, the vote to issue the stock was passed and immediately thereafter the certificate was made out and issued to Foster, who paid in return therefor in bills the $11,700 which had been borrowed from Nickerson. Such haste does not commonly characterize square business dealings. The price at which the stock was issued, although ordinarily a fair one, was not so much as could have been obtained if the directors had taken advantage of the contest for the control of the corporation. This fact was properly regarded as important as bearing upon the good faith of the defendants and tending to show that their primary purpose in issuing the stock was to oust Elliott and his friends from control. It may well be entitled to even greater weight. *The Queen* v. *London & Northwestern Railway*, L. R. 9 Q. B. 134, 145. The circumstances, under which the certificate was paid for and issued, were such as not merely to put a reasonable man on inquiry, but to show irresistibly that Foster as a reasonable man knew of and participated in the scheme afoot. Reasonable men do not carry about in their pockets $11,700 of borrowed money in bills in a city after bank hours and procure therewith for themselves the actual possession of a certificate of stock in a business corporation after usual court hours, unless they know the transaction is such as will not bear investigation.

It is not necessary to pass upon the question whether actual knowledge on the part of Foster or only such circumstances as should have put a reasonable man upon inquiry respecting the want of authority on the part of the directors to issue the stock is necessary in order to render invalid the certificate in the hands of Foster, for the finding that he was a party to the purpose, for which the stock was issued, is fully borne out by the testimony.

There is no error in the rulings of law made. Mere belief that they are acting for the interests of the corporation on the part of a majority of the directors, who at the time represent a minority of the stock then outstanding, does not justify the issuing to confederates of a sufficient amount of stock to give to themselves, and to oust their opponents from, the control of the

corporation, when the issuance of stock is not required by the condition of the corporation nor reasonably necessary for the proper prosecution of its business. The directors of a corporation act in a strictly fiduciary capacity. Their office is one of trust and they are held to the high standard of duty required of trustees. They cannot be permitted so to manage the affairs of their *cestui que trust* that the system of business corporations, by which so large a part of the world's work is now conducted, " may become a system of frauds." *Peabody* v. *Flint*, 6 Allen, 52, 55. *European & North American Railway* v. *Poor*, 59 Maine, 277. Corporate directors cannot manipulate the property, of which they have control in a trust relation, primarily with the intent to secure a majority of the stock or of directors in any particular interest. This is not a fair exercise in good faith of the power with which they are clothed. *Punt* v. *Symons*, [1903] 2 Ch. 506, 515. This is especially true when the issuance of the stock is for the express purpose of retaining in power the very persons who authorize the issue, and who are therefore distinctly benefited to the disadvantage of another and substantial part of their stockholders. *Gray* v. *Portland Bank*, 3 Mass. 364. *Cannon* v. *Trask*, L. R. 20 Eq. 669. *Luther* v. *Luther Co.* 118 Wis. 112. *Way* v. *American Grease Co.* 15 Dick. 263. The defendants rely upon the principles laid down in *State* v. *Smith*, 48 Vt. 266. Without discussing the soundness of this decision, the facts, upon which it was based, namely, that the sale of the stock was for a necessary purpose and beneficial to the corporation, distinguish it from the case at bar. *Rural Homestead Co.* v. *Wildes*, 9 Dick. 668, also relied upon by the defendants, was a case where the act attacked was found to be beyond reasonable criticism and the purchaser of the stock to be acting in good faith and without notice, the reverse of the situation here disclosed. The decree is to be so far modified as to include the costs of this appeal, and as modified affirmed. *Graves* v. *Hicks*, 191 Mass. 102.

*So ordered.*

*S. J. Elder*, for the defendant Foster.

*G. L. Mayberry*, (*H. Albers* with him,) for other defendants.

*S. W. Emery*, (*G. K. Bartlett* with him,) for the plaintiffs.