## In Equity.

ALLEN P. TRASK AND OTIS SKINNER *vs.* GEORGÈ E. CHASE et als.

### Penobscot.    Opinion September 29, 1910.

*Equity. Pleading. Demurrer. Hearing. Discretion of Court. Jurisdiction.*
*Fraud. Corporations. Directors. Fraud of Directors. Equitable Remedy.*
*Injunction. Actions. Appeal. Exceptions. Evidence.*
*Revised Statutes, chapter 79, sections 22, 27.*

1.   In equity practice, merely technical and formal defects in a bill are not open to attack under a general demurrer.

2.   If a demurrer be filed to the whole bill, and there is any part of the bill which on its face entitles the plaintiff to relief, the demurrer, being entire, must be overruled.

3.   The allegations in a bill in equity for an injunction and other relief, to the effect that the defendants, constituting a majority of the directors of a corporation, but owning less than a majority of its stock, collusively and fraudulently issued stock to one of their number, for the purpose of securing control of the corporation by the ownership of a majority of the stock, and thereby preventing the plaintiffs, who had been the owners of a majority of the stock, but were a minority of the directors, from retaining control, state a case cognizable in equity.

4.   The acts thus charged constitute a breach of trust, and are a fraud upon the minority directors, who are the majority stockholders.

5.   In such case, equity has jurisdiction irrespective of whether the injured parties have a remedy at law, or whether such a remedy will be effective, or whether the loss from the want of an equitable remedy will be irreparable.   Whether the defendants are insolvent or pecuniarily irresponsible, or not, is immaterial, and need not be alleged.

6.   In such case it is not necessary to allege or prove that the stock thus fraudulently sold was sold at less than its real value.   Such a fact, if true, is evidence merely of fraud.   It is at least sufficient if it is alleged in effect that the corporation is alive, a going concern, with valuable assets.

7.   The allegations in a bill in equity for injunction and other relief to the effect that the defendants, who are a majority of the directors, but owning less than a majority of the stock, intend to issue to themselves the balance of capital stock unissued, in violation of a by-law which prescribes that the directors shall issue the unissued stock to stockholders "in proportion to their respective interests," and that they will do so unless restrained, state

a case cognizable in equity. To issue all the unissued stock to themselves, without permitting other stockholders to take their respective shares would be unlawful, a breach of trust, and fraudulent as to the other stockholders.

8. An allegation that the plaintiffs protested against a vote of the directors, and caused their protest to be recorded is equivalent to an averment that they did not vote for the proposition in question.

9. In a bill in equity brought by stockholders to compel a director to surrender stock which has been fraudulently issued to him, it is not necessary to allege a tender or an offer to pay back the money paid by the director for the stock, or an offer to vote for its repayment.

10. In such a bill, to which all the stockholders are parties, it is not necessary to allege that the bill is brought on behalf of other stockholders, nor a willingness to let in other stockholders, nor that the bill is brought on behalf of the corporation, when the purpose of the bill is not to redress or prevent corporate wrongs.

11. In such a bill, when it is apparent on the face of it that an application to the directors or the corporation for relief would be fruitless, a demurrer will not lie for want of an allegation of such application. Whether it would be necessary to so allege in any case of this character is not considered.

12. An exception to the refusal of the sitting Justice, at the time of settling the final decree, to modify a preliminary injunction is not considered, because the preliminary injunction will no longer be of any importance when the final decision of the case is handed down.

13. Whether counsel, in his opening, in an equity hearing may read a piece of documentary evidence, in advance of its being offered as such, is a matter solely within the discretion of the Justice hearing the case. To his ruling thereon exceptions do not lie.

14. When an equity case is heard by the Law Court on appeal, the statute makes it the duty of the court to "affirm, reverse or modify the decree of the court below, or remand the cause for further proceedings as it may think proper."

15. Exceptions taken to the admission of testimony during the hearing of a case in equity are ineffectual, when the case goes to the Law Court on appeal, because, even if the rulings admitting testimony were erroneous, the court does not sustain the exceptions and send the case back for a new hearing, but, disregarding the inadmissible evidence, it decides the case finally, as the statute requires, and upon such evidence as it deems admissible. The same rule applies when evidence is erroneously excluded, if the record sufficiently shows what that evidence was.

16. The court is of opinion that the finding of the sitting Justice that the vote of the defendant directors to issue the stock mentioned in the bill to one of their own number and the issue of it accordingly were solely to enable the defendants to acquire control of the corporation and to oust the plaintiffs from their control, is amply supported by the evidence. It would be sufficient if that was the primary purpose.

17. The plaintiffs introduced a statement of the affairs of the corporation given by the director to whom the stock in controversy was issued to another director. The statement had a tendency to show that the stock was sold to him for less than it was worth. This was evidence of fraud, and was properly admitted, as against that director, the only one pecuniarily concerned in that branch of the case.

18. Breach of trust and fraud are among the fundamental grounds of equitable jurisdiction.

19. The directors of a corporation are trustees standing in fiduciary relations to the corporation and its stockholders, and are held to the exercise of the utmost good faith.

20. Holders of the majority of the stock in a corporation have a right to control the corporation, and it is a fraud for the directors or a majority of them to take advantage of a temporary ascendency in the board of directors to so manipulate the sale and issue of stocks as to oust the control from the majority of the stockholders, and secure it to themselves.

21. In equity matters the findings of the sitting Justice are to stand unless clearly shown to be erroneous.

In equity. On exceptions by defendants. Overruled. Decree below affirmed.

Bill in equity brought by the plaintiffs against George E. Chase, Robert C. Williston, George W. Smith and the Bangor Jewelry and Optical Company, a corporation, in which said company the plaintiffs and the said Chase, Williston and Smith are stockholders, praying for injunctions both temporary and permanent, restraining the said Williston from voting certain shares of the stock of the corporation held by him, or otherwise exercising the rights of ownership over the same, and from transferring the same and also that he be ordered to surrender and deliver to the treasurer the certificate thereof to be cancelled. The bill also contained other prayers all of which are stated in the opinion.

The defendants filed an answer with a general demurrer therein inserted. The cause was first heard in the demurrer which was overruled, and the defendants excepted. It was then heard on bill, answer and proof, and a decree was made in favor of the plaintiffs. The defendants then appealed and also excepted to certain rulings during the hearing.

The case is stated in the opinion.

*E. C. Ryder*, for plaintiffs.

*Hugo Clark, and Charles H. Bartlett*, for defendants.

SITTING :   SAVAGE, PEABODY, SPEAR, CORNISH, KING, BIRD, JJ.

SAVAGE, J.   This is a bill in equity brought by two stockholders in the Bangor Jewelry and Optical Company against all the other stockholders and the corporation itself.   It is alleged in the bill, among other things, that the capital stock of the corporation is $10,000, divided into 10,000 shares of the par value of one dollar each ; that the plaintiffs, Trask and Skinner, and the defendants, Chase, Williston and Smith, are the owners of all the capital stock ; that on February 1, 1909, which was the date of the last annual meeting prior to the filing of the bill, 8,025 shares had been issued, which were then owned as follows:   3,300 shares by Trask, 950 shares by Skinner, 2,000 shares by Smith, 1,150 shares by Chase, and 625 shares by Williston ; that at the annual meeting it was voted by a majority vote of the stockholders not to sell or issue any more shares of the capital stock of the company ; that at said meeting all the stockholders, Trask, Skinner, Smith, Chase and Williston were elected directors, and have since remained such; that Smith was elected president, and Chase treasurer ; that it is provided in the by-laws of the corporation that the directors shall cause to be issued to the stockholders in proportion to their respective interests certificates of stock, not to exceed in the aggregate the capital stock of the corporation ; that on March 22, 1909, Smith and Chase, president and treasurer respectively, and both of them directors, in breach of their trust and duty as officers and directors of the corporation, issued to Williston ten shares of the capital stock ; that this was contrary to the vote passed at the annual meeting, before recited, and to the by-laws; that it was done without the authority of any vote passed at any meeting of the stockholders or directors, and without opportunity for other stockholders to purchase the same or any part thereof; that on July 22, 1909, a meeting of the directors, called at the request of Chase and Williston, according to the by-laws, was held, at which the following vote was passed :   "Whereas it is desirable to reduce the indebtedness of this company to the Kenduskeag Trust Company, and whereas it is also desirable at this time to recognize the faithful and valuable services

of R. C. Williston, [one of the directors] who came to the company's employ on an understanding, perhaps not binding in law, to the effect that if he remained in the company's employ giving satisfaction for a reasonable time he should have the privilege to invest in and become the owner of the company's stock at par to an amount equal to the present holdings of George E. Chase ; and whereas said Williston has remained and still remains in the employ of this company as one of its servants, and has given and still gives satisfaction in all respects to the present time, now therefore be it and it is hereby voted : That this company sell five hundred and twenty five shares of its capital stock to R. C. Williston at par, and that the president and treasurer of this company be and they are hereby authorized and directed to forthwith issue a proper stock certificate of this company in the usual form to him for said five hundred and twenty-five shares on his payment for the same to the treasurer of this company in cash at par ; and that the treasurer of this company be and he is hereby authorized to make payment of the sum of five hundred and twenty-five dollars, being the amount to be realized from such sale of stock, on account of this company's indebtedness to the Kenduskeag Trust Company of Bangor, and to give a new note of the company, with such indorsements as may be arranged, for the balance ;" that the plaintiffs seasonably protested against the passage of the foregoing vote, but that the protest was disregarded by Chase, Williston and Smith, the defendants ; that the protest was recorded ; that a certificate for five hundred and twenty-five shares of stock was immediately issued to Williston ; that he now holds the same; that no opportunity was given to the plaintiffs to purchase any part of the unissued capital stock, though they were ready and willing and offered to take and pay for, at par, shares of stock in proportion to their respective interests at that time; that the action of the defendants, Chase, Williston and Smith, was a violation of their trust and duty as directors of the company ; that they were in collusion with one another to prevent the plaintiffs from securing their proportional part of the capital stock, and from retaining control, as the holders of a majority of the capital stock, of the affairs of the company ; that their acts were in violation of the vote of the stock-

holders, before referred to, and contrary to the by-laws of the company and the laws of the state; that the assets of the company, exclusive of unissued treasury stock, then amounted to more than $15,000; that there were no debts due at that time, and no reasons for the sale and issuance of the stock to Williston; that the vote to issue the stock to Williston was passed for the express purpose of securing control of the affairs of the company, and preventing the plaintiffs from holding a majority of the capital stock, and was a fraud upon the plaintiffs; that if Williston is allowed to retain the stock the plaintiffs will be prevented to their injury from securing their proportion of the capital stock; that Chase, Williston and Smith will own a majority of the capital stock, and as such can manage the affairs of the company according to their own pleasure, and for their own benefit, and the plaintiffs will be unable to obtain redress through any action of the corporation itself, and will be deprived of their rights as stockholders, and from acquiring valuable property to which they are entitled; that Chase, Williston and Smith intend to issue to themselves the balance of the capital stock now remaining unissued; that Williston intends to transfer the certificate of stock; that, if it be necessary to sell additional shares of the stock remaining in the treasury on said July 22nd, 1909, the plaintiffs are willing and ready and offer to take and pay for at par all of the shares to which they are entitled, in proportion to their respective interests; that the plaintiffs have no adequate remedy at law, and will suffer irreparable loss if Williston is permitted to retain or transfer the stock issued to him on said July 22, or if Chase, Williston and Smith, as directors, issue the remaining capital stock now in the treasury.

The bill prays for injunctions both temporary and permanent restraining Williston from voting, or otherwise exercising rights of ownership over the stock in question, and from transferring the same, and that he be ordered to surrender and deliver to the treasurer the certificate to be cancelled. There is also a prayer that Smith and Chase, as president and treasurer, respectively, be restrained from disposing and issuing certificates for any capital stock now in the treasury, or from issuing certificates transferring the

Williston stock.    Further it is prayed that the directors be enjoined
from offering for sale, or issuing, any unissued capital stock without
first giving all stockholders an opportunity to subscribe for and pur-
chase such stock in proportion to their respective interests.    The
bill was brought July 26, 1909.

To this bill the defendants answered, and in their answer they
inserted a general demurrer, alleging for causes of demurrer, want
of equity, and plain, complete and adequate remedy at law.

The case was first heard on the demurrer, which was overruled,
and the defendants excepted.    It was then heard on bill, answer
and proof, and a decree was made in favor of the plaintiffs.    The
defendants appealed.    They also took eight exceptions to rulings
during the hearing.

We will first examine the demurrer.    We have stated all of the
essential averments in the bill substantially in full, because the
argument upon the demurrer attacks it upon every side.

As already stated, the defendants under their general demurrer
have assigned two causes, that the bill states no right of the plain-
tiffs, cognizable in equity, and that the plaintiffs have a plain,
adequate and complete remedy at law.    But in argument counsel
state twenty-four specific reasons why the bill is demurrable.    Many
of these relate to formal and technical questions which should have
been raised by special demurrer, and are not properly open under a
general demurrer.    Whitehouse Equity Practice, sections 338, 339.
But this point has not been made by plaintiff's counsel.    Hence we
will consider them so far as it seems to be useful in determining the
rights of the parties.

The gist of the complaint stated in the bill is (1) that the personal
defendants, constituting a majority of the directors, but owning less
than a majority of the stock, collusively and fraudulently issued
stock to one of their number, for the purpose of securing control of
the corporation by the ownership of a majority of the stock, and
thereby preventing the plaintiffs, who had been the owners of a
majority of the stock but were a minority of the directors, from
retaining control, and (2) that the defendants intend to issue the
balance of capital stock unissued to themselves in violation of a

by-law which prescribes that the directors shall issue the unissued stock to stockholders in proportion to their respective interests, and that they will do so unless restrained. And all these particulars are, we think, sufficiently stated so as to be held good against a general demurrer. Each of the causes states a case cognizable in equity.

Considering them in their order, we say that if the first set of allegations be true, as the demurrer admits, the act of the defendants constituted a breach of trust, and was a fraud upon the plaintiffs. And equity will prevent the collusive participants from enjoying the fruits of their fraud, and will restore to the plaintiffs if possible the rights of which they have been defrauded. Equity has jurisdiction irrespective of whether the injured parties have a remedy at law, or whether such a remedy will be effective, or whether the loss for want of such an equitable remedy is irreparable. Whether the defendants are insolvent or pecuniarily irresponsible, or not, is immaterial and need not be alleged. Breach of trust and fraud are among the fundamental grounds of equitable jurisdiction.

The directors of a corporation stand in fiduciary relations to it and to its stockholders. They are trustees. They are held to the exercise of the utmost good faith. It is commonly stated in the cases that they are the trustees and the corporation and stockholders are the cestuis que trustent. They manage the corporation for the benefit of the stockholders. Holders of the majority of the stock have a right to control the corporation. It is a fraud for the directors or a majority of them to take advantage of a temporary ascendency in the board of directors to so manipulate the sale and issue of stock as to oust the control from the majority of the stockholders, and secure it to themselves, and equity will afford relief, 2 Cook on Corporations, sect. 614; *Luther* v. *Luther Co.* 118 Wis. 112; *Essex* v. *Essex*, 141 Mich. 200; *Way* v. *American Grease Co.*, 60 N. J. Eq. 263; *Elliott* v. *Baker*, 194 Mass. 518; *Goodwin* v. *Cincinnati & W. C. Co.*, 18 Ohio St. 169; *Farmers L. & T. Co.* v. *N. Y. & N. R. Co.*, 150 N. Y. 410. Such is the law in England. *Punt* v. *Symonds Corp. Ltd.*, 2 Ch. (1903) 506.

In the Wisconsin case of *Luther* v. *Luther Co.*, the court states the reasons for the doctrine with such clearness and convincing force that we quote from the opinion. In that case it appears that the directors had authority to sell unissued stock to whom and at such prices as in the exercise of an honest discretion they might deem best for the corporation. The court said : "Even then, however, their duties with reference thereto are fiduciary ; they are bound to act uberrima fides for all stockholders. To dispose of or manage the property of the corporation to the end and for the purpose of giving to one part of their cestui que trustent a benefit and advantage over, or at the expense of, another part, is a breach of such duty, especially when the directors themselves belong to the specially benefited class. It cannot matter how the result is accomplished, nor what the form of the undue benefits conferred or acquired. The benefit to the one class or the injury to the other need not be pecuniary. While the ultimate purpose of most stock corporations is money profit, the right of proportionate voice and influence in selection of policy and method of accomplishing that result is most important to each stock-holder. It is as fundamental and vital as the right of suffrage under a representative government. While a governmental act may not take away from any class of citizens property or physical liberty, yet if, contrary to the fundamental law of organization, it abates their suffrage, it would be held void. Each holder of a share of stock has the right that, by convincing the holders of a certain number of other shares, his policy of business be followed. Any invasion of that right is an injury to him, which from his point of view may be greater than any considerable money loss to the corporation. While this right must yield to a power over it given by the terms of the association, still he has the right to insist that such power shall be exercised for the purposes of the whole association. It is not so when exercised for the direct purpose of depriving him of his proportional voice and influence. That is not a legitimate manner for those temporarily vested with power to perpetuate the policy which they favor."

In *Elliott* v. *Baker*, supra, the court in Massachusetts used this language :—"Corporate directors cannot manipulate the property of

which they have control in a trust relation, primarily with the intent to secure a majority of the stock of or directors in any particular interest. This is not a fair exercise in good faith of the power with which they are clothed. This is especially true when the issuance of the stock is for the express purpose of retaining in power the very persons who authorize the issue, and who are therefore distinctly benefited to the disadvantage of another and substantial part of their stockholders."

In some of the cases, in stating the elements of the doctrine, the courts include a selling of the stock at less than its real value. That fact existed in those cases, and doubtless strengthened the equity of the complainants' cause. But we do not think it necessary to allege or prove that the stock was sold at less than its actual value. If it was so sold, the injury would be primarily to the corporation, and only consequentially to the stockholders. In a case like the one at bar, the complainant asks and is entitled to a remedy for a direct injury to him, in which the corporation is not concerned, namely, the unlawful deprivation of the right of control. For a further elucidation of this point we refer to the discussion of the court in the Wisconsin case already quoted. While it may not be necessary, it is at least sufficient, if it is alleged, as in this case, that the corporation is alive, a going concern, with valuable assets. The fact that stock is sold at less than its value is evidential merely. It is important as bearing upon the good faith of the defendants, and tending to show that their primary purpose in issuing the stock was to oust the plaintiffs. *Elliot* v. *Baker*, supra ; *Essex* v. *Essex*, supra. Since it will appear in the consideration of the appeal that the stock was sold to Williston at less than its actual value, it is proper to say here that an amendment setting out that fact would be allowed now, if necessary, but we think it is not.

We therefore conclude, so far as the question of issuing stock to Williston for the purpose of ousting the plaintiffs from control is concerned, the plaintiffs have stated a cause for equitable relief, not assailable under general demurrer. And here we might rest our discussion under the demurrer. It is a demurrer to the whole bill, and the rule in such case is that where there is any part of the bill

which on its face entitles the plaintiff to relief, the demurrer, being entire, must be overruled. Whitehouse Equity Practice, sect. 336.

But we will notice briefly the other ground on which relief is asked, that is, the alleged intention of the directors to issue all the remaining unissued stock to themselves. The by-laws of the corporation gave each stockholder a right to his proportion of the unissued stock when issued. It is alleged that the stockholders voted not to sell or issue any more stock. Much discussion has been had upon the questions whether this vote was legally passed, and if so, what was its effect. It appears in the evidence that a minority of the stockholders holding a majority of the stock voted for it. The defendants contend that in the absence of statute or by-law affecting the same, the common law rule of one stockholder, one vote, prevails. But this question does not arise under the demurrer. There are no facts stated upon which to raise it. And we think it is immaterial whether, as the plaintiffs claim, the vote was effective as an amendment of the by-law, and deprived the directors of any authority to issue stock, or as the defendants claim, that it was an irregular, and an unauthorized attempt to amend the by-law, and of no effect. If the plaintiffs are right in their contention, the defendants, as directors or officers, had no authority to issue unissued stock, and an attempt to do so would be unlawful. If the defendants are right, their authority to issue unissued stock was limited by the by-law. They could issue it only to stockholders, and in proportion to their holdings or interests, unless those who were entitled to proportionate shares waived their right. To issue it all to themselves, as it is alleged that they intend to do, and will do unless restrained, without permitting other stockholders to take their respective shares, would be unlawful, a breach of trust, and fraudulent as to the other stockholders. It would deprive the latter of the right to take their shares of the stock. To prevent such an illegal act equity will afford a remedy, preventive or otherwise, as it does for other breaches of trust and frauds.

Whether it was necessary, in connection with this ground of complaint, to allege specifically the value of the stock, as is claimed, is

a question not now open in a discussion of the demurrer, because, for reasons already stated, the demurrer must be overruled in any event.

The plaintiffs contend that the issue of stock to Williston was illegal because the vote to do so was passed only by means of his own vote as a director, and that being interested he could not vote. *Camden Land Co.* v. *Lewis*, 101 Maine, 78. We do not consider this question because it is evidently not within the theory of the bill as framed. We notice it only to say that the contention of the defendants that it does not appear by the bill but that the plaintiffs themselves, who were present at the meeting, voted for the issue of stock to Williston and so are to be barred from their remedy, is not tenable. We think the allegation that the plaintiffs protested against the passage of the vote and caused their protest to be recorded is by every fair intendment equivalent to an averment that they did not vote for it.

Many of the objections made in argument to the bill have already been sufficiently touched upon. Inasmuch as the claim founded on the alleged ·illegality of the directors' vote to issue the stock on account of Williston's interest is to be disregarded, some of the other objections become unimportant. Such of the others as are of importance we will now briefly consider.

It is objected that the bill contains no allegation of a tender, or of an offer to pay back, or to vote in favor of paying back to Williston the money he paid for the stock. It is not necessary. The plaintiffs hold none of Williston's money. He paid it to the corporation. Its repayment was a matter between him and the corporation. Whether Williston's connection with the fraud was such as to make it equitable or inequitable that the corporation should refund the money to him was a matter to be determined by the court in its discretion after a hearing of the case. The court in this case decided that the money should be paid back.

It is objected that there is no allegation that the bill is on behalf of other stockholders, nor of willingness to let in other stockholders, nor that the suit is in behalf of the corporation and other. stockholders. There are two answers. One is that the bill is not brought

to redress or prevent corporate wrongs, another is that all the stock-holders are already parties.

It is objected that there is no sufficient allegation of threats to dispose of the remaining unissued stock. But there is an allegation that they intend to do and will do so. Threats would be evidentiary of intent, but they would not make the intent any different or more dangerous.

It is objected that the bill does not show that the plaintiffs have applied to the defendants to right the wrong. If the rule which requires a stockholder who seeks to have a corporate wrong remedied first to apply to the directors or the corporation, is applicable to a case like this, about which we do not stop to inquire, it is apparent on the face of the bill that the rule should not be applied here, because it is obvious that such an application by the plaintiffs to the defendants, or to the corporation, under the stock control of the defendants, would have been useless ; under such a condition it is not required. *Ulmer* v. *Maine Real Estate Co.*, 93 Maine, 324.

It follows from all that we have said that the defendants can take nothing under their demurrer, and their exception to the overruling of the demurrer must itself be overruled.

The defendants took seven exceptions during the progress of the hearing before the single justice, and one at the settling of the final decree to the refusal to modify the preliminary injunction. All that need be said of the last exception is that when this decision is handed down the preliminary injunction will no longer be of any importance.

The first exception related to the permission given to plaintiff's counsel in opening his case and as a part of his opening to read a piece of documentary evidence, in advance of its being offered as such. That was a matter solely within the discretion of the sitting Justice, and to this ruling exceptions do not lie.

The next six exceptions relate to the admissibility of evidence. Of these it may be said, as was said in *Redman* v. *Hurley*, 89 Maine, 428, they "need not be considered here." Since the case also comes up on appeal, "the vital question is whether there be sufficient legal evidence in the case to sustain the decree below." The statute, it is true, provides that an aggrieved party may take exceptions to any

ruling of law made by a single justice, "the same to be accompanied only by such parts of the case as are necessary to a clear understanding of the questions raised thereby." R. S., chapter 79, section 27. In the Law Court such exceptions are "heard and determined like appeals." But they are not appeals. ˙ The decisions upon them are not necessarily decisive of the case. No question is open except the points raised by the exception.

But on appeals all questions which appear in the record are open. Upon the whole case the court is required to "affirm, reverse or modify the decree of the court below, or remand the cause for further proceedings, as it may think proper." R. S., chapter 79, section 22. The cause in the appellate court is heard anew upon the record. *Redman* v. *Hurley*, supra. The record of course shows the evidence admitted. "If it also shows any evidence excluded, or shows its nature, as it properly should, exceptions then serve no useful purpose in the law court and will not be considered on appeal, since if the evidence is improperly admitted, it will simply be disregarded by the court, and if the evidence excluded was material, the court may still give it the weight to which it is entitled." Thus the practical situation is stated in Whitehouse's Equity Practice, sect. 494. This case involves only the first part of the proposition, namely evidence admitted, and of this we repeat what was said in *Redman* v. *Hurley*, supra, that the admission of the evidence below "is of no consequence, except so far as it shall be considered competent for consideration on appeal." It is of no consequence when there is an appeal, because the party excepting on questions of the admissibility of evidence and of practice practically takes nothing by his exceptions. Even if the rulings were erroneous, the court does not sustain the exceptions, and then send the case back for a new hearing, for it is the duty of the court to determine the whole case on the appeal, on such evidence as it deems admissible. In this way we must now determine this case.

The sitting Justice found, among other things, that the directors' vote at the meeting of July 22, 1909 to issue the stock in question to Williston and the issue of it accordingly, were "solely to enable Smith, Chase and Williston to acquire control of the corporation."

He also found that the issue of the stock was without authority under the by-laws and vote of the stockholders. And he ruled that Williston was not equitably entitled to retain the stock, and decreed that he should return the stock for cancellation.

In determining the appeal it will be necessary to consider only the questions involved in the first of the above findings, namely, that the stock was issued for the purpose of enabling the minority stockholders to acquire the control of the corporation, and ousting the majority. We need not repeat the discussion already made concerning the law. If this finding is correct, the act was a fraud upon the rights of the majority stockholders. If done with a common understanding, it was collusively as well as fraudulently done. Nor do we think it is necessary that the acquisition of control should be the sole purpose of the vote, to make it fraudulent. It is sufficient if it be the primary purpose. *Elliott* v. *Baker*, supra.

By the rule in this State, the findings of the sitting Justice are to stand unless shown to be clearly erroneous. *Young* v. *Witham*, 75 Maine, 536 ; *Hartley* v. *Richardson*, 91 Maine, 424 ; *York* v. *Mathis*, 103 Maine, 67. This rule, however, is not the basis of our decision in this case. We think the evidence amply justified the finding. We shall not attempt to notice all the points of proof which the evidence affords. The following are some of the more patent ones.

The stockholders were divided into two factions. There is evidence that Williston from one faction, and Skinner from the other, had both sought to have additional stock. Smith, Chase and Williston were unwilling that Skinner should have any more. Trask and Skinner were unwilling that Williston should have more. The by-law provided that the directors should issue the unissued stock to stockholders in proportion to their respective interests. This by-law had not been observed. Apparently the rights of the stockholders under it had from time to time been waived. But that matters not now. At the annual meeting of the stockholders, February 1, 1909, the plaintiffs undertook in a measure to stand upon their rights. Having a majority of the stock, they voted by a stock vote not to issue any more stock. The defendants opposed

the vote. Whether that vote was legal and effectual, in view of the by-law provisions, we do not need to say. We allude to it merely as a fact, showing the contentions of the parties at that time. In the early part of 1909, defendant Smith took a transfer of all of plaintiff Trask's stock as collateral security for his endorsement of Trask's six months note to become due July 13. That note was in a bank. On March 22, 1909, he surrendered Trask's stock certificate and took out a new one in his own name. On July 2, defendant Chase, as clerk of the corporation, issued a call for a stockholders' meeting on July 9. The purpose of the call was not stated. On July 3, Chase issued another call for a stockholders' meeting on July 13, at 8 o'clock A. M. The purpose was not stated. The defendants were all cognizant of these calls, but none attended at the place for meeting, and no meetings were held. The defendants have undertaken to state the reasons why the meetings were called. But the reasons given are unsatisfactory. We cannot discover that they are at all relevant to a stockholders' meeting. It is to be noticed that at the time these notices for meetings were issued, Trask's 3,300 shares were standing in Smith's name. July 13, the date fixed for the meeting under the last call was the day that Trask's note came due at the bank, and that the hour, "8 o'clock A. M." was before banking hours. No notice of the meeting was given to Trask, although Smith, when he took the stock as collateral, gave back a receipt in which it was recited that "all rights in said stock to remain with said Trask." Smith testified that the reason no notice was given to Trask was because he, Smith, supposed that Trask would give Skinner a proxy to vote his stock.

But Trask learned of the calls for the meetings, and paid his note at the bank before the hour fixed for the first meeting, and demanded his stock, which was returned to him. Then, either as a sequence, or as a consequence, no meetings were held. These facts do not seem to be in dispute. And while they may be strongly significant of a purpose on the part of Smith to vote the Trask stock, and thus control the stockholders' meetings, — a purpose abandoned when he had to return the stock, — we do not say that they afford sufficient proof of it.

But on July 14, 1909, the next day after the one fixed for the last stockholders' meeting, the defendants began what seems to have been a more deliberate and carefully studied campaign to secure control of the corporation. Chase and Williston, directors, in writing, in accordance with the by-laws, asked Chase, clerk, to call a meeting of the board of directors, "to take action on the affairs of said company and to provide ways and means for the payment of its debts and the conduct of said company's business." At the meeting no time was wasted, and the defendants carried things with a strong hand. Smith presided. Williston had with him a series of type-written resolutions, evidently agreed upon by the defendants in advance, whose passage, one after another, he moved, and Chase seconded. Among them was the one recited in the bill, for the issuing of the stock in question to Williston. The records state that this resolution was carried by the votes of "Smith, Chase and Williston," against the protest of Trask and Skinner. The plaintiffs testify that even debate was denied, until after the resolution was adopted. A previously prepared resolution was adopted dismissing Skinner, the plaintiff, who was a clerk and bookkeeper for the company, the dismissal to take effect "immediately." A formal written discharge was handed to him on the spot, and his key was demanded. It was ordered that the store and personal property be put into the direct custody of the treasurer, Chase, and the general manager, Williston.

The defendants claim that in April, 1906, Williston was induced to enter into the employment of the company on the strength of an understanding that he should have the right to take and pay for unissued stock of the company until he should have at least as much as Chase had, and that the resolution of the directors passed on July 22, 1909, was not for the purpose of securing control of the corporation, but of discharging its duty to Williston in reference to the stock understanding, as well as for providing means to pay corporate indebtedness. The defendants testify that the arrangement was that Williston was to have stock as fast as he could pay for it. Williston himself says, "I was to have the privilege of investing my money in

the company just as fast as I was able to get it together until I should have equal holdings with Mr. Chase." The plaintiffs deny that there was any such arrangement. If there was such an arrangement, we think, as did the sitting Justice, that it had nothing to do with the directors' vote, July 22. It does not appear that Williston, during the three years he had been connected with the company, had ever made any claim under the alleged understanding. In fact, the money that he paid for this stock was not money that he "had got together," but was money loaned to him without security by Smith for the purpose of paying for the stock.

There is another feature, also indicative of fraud, which we notice separately, since it was the subject of one of the defendant's exceptions. The stock in question was issued to Williston at par. The sitting Justice found that it was worth thirty per cent premium, and was so understood by the defendants. The evidence from which this finding is to be deduced, if at all, is a statement of the affairs of the corporation furnished by the defendant Williston to the plaintiff Skinner. But it is urged that this statement was inadmissible. We think otherwise. A sufficient reason is that Williston is a party to the suit. The statement was his declaration. It was admissible as such against him, at least, and he was the only defendant pecuniarily concerned in this branch of the case.

We have examined the evidence to which the other objections were made at the hearing, and we do not think that any of the objections are well founded.

Under all these circumstances, we think it would be farcical to say that a fraudulent and collusive purpose to deprive the plaintiffs of their rights as majority stockholders is not shown.

Besides a decree for the return of the Williston stock, we think under all the circumstances that the plaintiffs are entitled to hold that part of the decree which enjoined the sale, or offering for sale, of any of the stock ordered returned or any of the other unissued stock "except upon such terms and conditions as will ensure to each then stockholder the right to purchase and receive of such stock so offered for sale an amount proportionate to his then legal holdings

of stock of the corporation." This merely forbids the issuing of stock except as provided in the by-law, as we construe the by-law, and of this the defendants cannot complain.

*Exceptions overruled.*
*Decree below affirmed with one*
*bill of additional costs.*