ELIZA J. BURLESON *vs.* GEORGE R. WOODIN & others.

Suffolk.    December 4, 5, 1911. — June 19, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Equity Jurisdiction,* Fraud, Trust.

In a suit in equity by a woman against a promoter of mining schemes to compel the defendant to reassign to the plaintiff a mortgage which he was alleged to have induced the plaintiff by fraud to assign to him, the defendant testified that he took from the plaintiff an assignment of a mortgage for $4,700 to raise for the

plaintiff $3,000 to enable her to purchase shares of stock in a mining company which he was promoting, that the defendant borrowed $3,000 from a trust company on an assignment of the mortgage and delivered to the plaintiff the shares of mining stock and that later he took up the loan *from* the trust company by borrowing $3,500 from one S on an assignment of the morgtage. It appeared that the plaintiff had been a dressmaker who had retired from business on account of ill health and was living in three rooms in a tenement house. There was evidence on which it could be found that the defendant visited her at her rooms where he talked to her about the mining company and its prospects, that as the result of one or more interviews he sold her the mining stock at $50 a share, and that the stock was of no value. *Held,* that on the defendant's own statement he held the mortgage as trustee for the plaintiff both as to the loan obtained from the trust company and that obtained from S. *Held, also,* that the evidence warranted a finding that the defendant obtained the assignment from the plaintiff by deception and fraud, it being a reasonable inference from the facts shown that the plaintiff would not have purchased the mining stock at $50 a share unless she fraudulently had been imposed upon by the defendant's representations; accordingly that the plaintiff was entitled to a decree requiring the defendant to pay his note for $3,500 to S and to reassign the mortgage to the plaintiff upon the surrender of the mining stock by the plaintiff to the defendant.

MORTON, J. This is a bill in equity brought by Eliza J. Burleson, now prosecuted by the administrator of her estate, for relief in respect to two mortgages, one of $4,700 and the other originally of $1,500 on which there was a balance of $500 due when the bill was filed, and of both of which the bill alleges that the plaintiff is the owner and payee. The bill alleges that the defendant Woodin claims to have received from the plaintiff assignments of said mortgages, and that the defendant Squires claims to be the lawful owner and holder of the mortgage for $4,700 and is threatening to foreclose it and apply the proceeds to the payment of Woodin's overdue note for $3,500. The bill denies that the plaintiff ever assigned either of the mortgages to Woodin, but avers that if she did such assignment was procured by fraud and undue influence on Woodin's part and was without consideration. An amendment to the bill was allowed in which it was averred upon information received by the plaintiff since the filing of the bill that the defendant Woodin, after the alleged assignment to him of the mortgage for $4,700, borrowed $3,000 from the Beacon Trust Company on an assignment of said mortgage, which he claims was paid to the plaintiff in stocks which she then purchased. The plaintiff denies that she purchased any stock but alleges that if it appears that Woodin did borrow and pay over said sum of $3,000 for stock purchased

by her, the stock was purchased through fraud and undue influence on his part and was then and is now worthless; and the plaintiff offers to surrender it to Woodin.  There was a decree for the plaintiff requiring the defendant Woodin to take up and pay his note for $3,500 to the defendant Squires and to return to the plaintiff the mortgage for $4,700 and requiring the plaintiff to surrender the stock to Woodin and also requiring the defendant Squires, upon payment by the plaintiff or Woodin of the amount due on Woodin's note for $3,500, to assign the mortgage to the plaintiff. The defendant Woodin appealed.

A memorandum was filed by the presiding judge * in which he made the following findings and rulings: "If the defendant Woodin took the assignment of the . . . mortgages . . . for the purpose of raising money on them for the use of the plaintiff, as he claims, he took them upon a trust, which he abused and violated when he used one of them as his own property for his own use. If he obtained such assignment . . . by deception and by fraud practiced upon the plaintiff by him, which I find was the fact, the mortgages are still impressed with a trust *ex malefacio*, for her; and in either case he should restore them to her." He also found that "The 'Enterprise' mining stock which he let her [the plaintiff] have was and is of no value."

The question is whether there was any evidence warranting these findings and the decree that was entered. We think that there was.

The evidence was all oral except that of the plaintiff which, owing to her ill health was given in the form of a deposition. Woodin himself was a witness, and there was testimony tending to show that his reputation for truth and veracity was bad. The presiding judge had an opportunity to see and hear the witnesses and in such a case his findings will not be set aside unless plainly wrong. *Elliott* v. *Baker*, 194 Mass. 518.

No question seems to be made as to the plaintiff's right to the mortgage for $1,500, though it is not mentioned in the decree. No explanation satisfactory or otherwise was offered by the defendant Woodin as to how it came to be included with the mortgage for $4,700 in the alleged assignment to him. According to

---

* *Richardson,* J.

Woodin's own statement he took an assignment of the mortgage for $4,700 to raise $3,000 for Mrs. Burleson to enable her to purchase sixty shares of stock in the Enterprise Mining Company, which he was engaged in promoting. He held it therefore as trustee for her and she was entitled to a return of it upon paying the $3,000 with interest and any expenses which he had incurred. The presiding judge must have found that she assigned the mortgages to Woodin notwithstanding her denial. It is possible that she did not understand the transaction. But however that may be, the effect of what took place was, as we have said, according to Woodin's own statement, to constitute him a trustee of the mortgage for her, both as to the loan obtained from the Beacon Trust Company and that obtained from the defendant Squires, to take up and pay the loan at the trust company. Without anything more this would entitle the plaintiff to a decree. This is not the theory on which the bill either as originally filed or as amended was drawn, but no objection has been made on that ground; and if objection had been made, it easily could have been removed by amendment.

We also think that there was evidence warranting a finding that the assignment was obtained by deception and fraud, and that the "Enterprise" mining stock was not and is not of any value. Woodin's business was that of promoting mining schemes and companies and of selling stock in mining companies. He dealt more, so far as appears, with women and persons of small means who naturally would be supposed to have less experience in such matters than with persons of business training and skill and with more means. He had previously sold Mrs. Burleson stock in the Dolores Mining and Milling Company and in the Richmond Group of mines, and it could have been found, if material, that those stocks were, so far as appeared, worthless. He testified that his confidence in the Richmond Group had been shaken and, beyond his own statements to which the presiding judge could give such weight as he chose, there was nothing to show that the stock of those companies had any value. Neither had ever paid a dividend, and both could have been found to be unreliable and irresponsible stocks. At the time when he sold Mrs. Burleson the sixty shares in the Enterprise Mining Company, the company had not been formed and owned no mines. If it had any assets there was no statement

of what they were or what its liabilities were. It never has paid a dividend, and in the last two years before the trial only one or two small lots of stock were sold. The only testimony in regard to its value came from Woodin and, as we have said in another connection, the court could give such weight to his testimony as it saw fit. It cannot be said, we think, that the finding that the stock was and is of no value was plainly wrong.

The plaintiff was a widow living in a small way in three rooms in a Washington Street tenement house. She had been in the dress-making business but had had to give that up on account of ill health. There was evidence warranting a finding that Woodin visited her at her rooms, and that as the result of one or more interviews he sold her the sixty shares of "Enterprise" mining stock at $50 a share, the par value being $100 a share. He admitted talking to her about the company and its prospects. There was no evidence that she had consulted or talked with any one else. Taking all the circumstances into account, the selling of the stock to her at $50 a share could of itself have been found to be a fraud. The more reasonable inference, if not the only inference, was that she would not have purchased the stock at $50 a share unless she had been fraudulently imposed upon by Woodin's representations.

*Decree affirmed.*

*H. W. Ogden,* for the defendant Woodin.
*W. H. Hitchcock,* for the plaintiff.