JOHN R. JOSLYN *vs.* ST. PAUL DISTILLING COMPANY, impleaded, etc.

### July 22, 1890.

**Corporation—Ownership and Transfer of Shares—Estoppel—Statements in Stock Certificate.**—A stock certificate issued by a corporation having power so to issue, in which it is stated that a designated person is the owner of a certain number of shares of stock transferable only on the books of the association, on the indorsement and surrender of the certificate itself, is a continuing affirmation as to the ownership of the stock, and that the corporation will not transfer the stock upon its books unless the certificate is first surrendered. Such a certificate is an assurance to the commercial world that the shares of stock are the property of the person designated, and that he has the power and right to transfer and sell the stock, until this power and right has been lawfully terminated.

**Same—Statutory Regulation of Transfers.**—Gen. St. 1878, *c.* 34, § 114, (formerly section 49,) was intended solely for the benefit and protection of the corporation. Following *Baldwin* v. *Canfield*, 26 Minn. 43.

**Same—Action to Compel Issue of Certificate — Necessary Parties.—** By its decree the court below commanded the defendant corporation to cancel, to a certain extent and amount, a stock certificate which it had previously issued to one H., in which was the statement as to ownership and transfer above mentioned, and in lieu thereof to issue another certificate to the plaintiff. The court had jurisdiction of the defendant corporation and the defendant H., but did not have possession of the certificate which it attempted to cancel. *Held*, that the decree was erroneous.

Appeal by the defendant corporation (impleaded with George W. Hicks and Lizzie M. Hicks, his wife, who appeared and answered) from a judgment of the district court for Ramsey county, where the action was tried by *Otis, J.*

*Lusk & Bunn*, for appellant.

*William G. White*, for respondent.

COLLINS, J. At the commencement of this action, one of the defendants, Lizzie M. Hicks, appeared on the books of the defendant corporation to be the owner of shares of its corporate stock of the par value of $30,000. There had previously been issued to her, and in her name, a certificate representing and evidencing these shares, in which was the usual clause and recital that the stock was "transferable only on the books of the company, on the indorsement and surrender of this certificate." The object of this action was to compel the defendant corporation to cancel the certificate to the extent of $15,000, and to issue its certificate to plaintiff for that amount of its corporate stock, upon the ground that to that extent the certificate had been fraudulently obtained by Lizzie M. Hicks, and that plaintiff was the real owner of the stock. The trial court had jurisdiction of the parties defendant, but did not obtain possession of the stock certificate issued to Mrs. Hicks. By its decree the full relief demanded in the complaint was awarded by the court.

The character and qualities of stock certificates are the only questions involved here. If they are to be treated as if they were the shares themselves, and, when properly transferred, as passing to the assignee all the equitable rights of the holder, and the legal right to be admitted as a shareholder on the books of the association, it must follow that, upon a regular assignment and delivery of the certifi-

cates, there has been transferred to the purchaser the full legal and equitable ownership of the shareholder's contract, with all the *indicia* of such ownership. While there has been some difference of opinion upon this, the weight of authority is, undoubtedly, that where a corporation having authority to issue a stock certificate does issue such a certificate, wherein it is affirmed, as in the case at bar, that a designated person is entitled to a certain number of shares of stock, transferable only on the books of the association, on the indorsement and surrender of the certificate itself, it thereby holds out to persons who may deal in good faith with the person named in the certificate that he is the owner, and has capacity to transfer the shares. There is in the certificate, which evidences and represents the shares, the assurance of the corporation to the commercial world that no prior right to the stock can be obtained, unaccompanied by possession of the certificate, and that the shares shall not be transferred upon the books of the corporation unless the certificate is first surrendered. As was said in *Bank* v. *Lanier*, 11 Wall. 369, 377, when speaking of stock certificates in which the same assurance was found: "No better form could be adopted to assure the purchaser that he can buy with safety. He is told, under the seal of the corporation, that the shareholder is entitled to so much stock, which can be transferred on the books of the corporation * * * when the certificates are surrendered, but not otherwise. This is a notification, to all persons interested to know, that whoever in good faith buys the stock, and produces to the corporation the certificates regularly assigned, with power to transfer, is entitled to have the stock transferred to him. And the notification goes further, for it assures the holder that the corporation will not transfer the stock to any one not in possession of the certificates." These conclusions have not been adopted by the courts on any view of the negotiability of stock certificates, but on general principles appertaining to the doctrine of estoppel. A representation, which has tended to enhance the value of the stock, has been made with a view or expectation that it would be acted upon by another; it has or may have been so acted upon; and a person who has relied upon the representation will be injured or damaged if it be withdrawn.

The certificate itself must be regarded as a continuing affirmation of the ownership by the person to whom it has been issued, and of his power over and right to sell the stock, until this power and right has lawfully terminated. It is clear that at any time, at least prior to the commencement of this action, a purchaser of the certificate, in good faith, from Mrs. Hicks or her assigns, would have had the right to rely on the certificate securing to him the shares of stock it represented and evidenced. *Bank* v. *Lanier, supra; Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y. 616; *Factors', etc., Ins. Co.* v. *Marine Dry Dock, etc., Co.*, 31 La. Ann. 149; *Bridgeport Bank* v. *New York & New Haven R. Co.*, 30 Conn. 231. See, also, as bearing upon the question, *National Bank of New London* v. *Lake Shore, etc., Ry. Co.*, 21 Ohio St. 221; *Cleveland & Mahoning R. Co.* v. *Robbins*, 35 Ohio St. 483; *Eby* v. *Guest*, 94 Pa. St. 160; *Broadway Bank* v. *McElrath*, 13 N. J. Eq. 24; *Strange* v. *Houston & Texas Central Co.*, 53 Tex. 162; *Galveston City Co.* v. *Sibley*, 56 Tex. 269; *Cherry* v. *Frost*, 7 Lea, 1; *Van Norman* v. *Circuit Judge*, 45 Mich. 204, (7 N. W. Rep. 796;) *Lowry* v. *Bank*, Taney's Dec. 310; *Continental Nat. Bank* v. *Eliot Nat. Bank*, 7 Fed. Rep. 369. As a good-faith purchaser, he would be fully protected; and a decree in these proceedings against the corporation, of the nature of that now under consideration, would be of no avail should such a purchaser hereafter demand recognition as a stockholder. While the doctrine adopted in the cases cited commends itself to us as sound in every way, it may also be said to be obvious that the interests of the defendant company, a domestic corporation, should not be hazarded by the adoption in this state of a rule of law contrary to that of the federal courts upon the same subject, by compelling it to issue a new certificate to plaintiff while the other may have passed into the hands of a non-resident, good-faith purchaser, who may in time assert his rights. The result of such a holding would be to place our own citizens at a disadvantage.

Attention has been called by the respondent to section 114, (formerly section 49,) c. 34, Gen. St. 1878, whereby it is enacted that corporate stock shall be deemed personal property, and be transferable only on the books of the association, in a form to be prescribed by the directors. Based on this statute, the claim is made that the de-

cree herein will protect defendant corporation against any holder of the stock of whose rights it had no notice at the time of the rendition of the decree. In *Baldwin* v. *Canfield,* 26 Minn. 43, (1 N. W. Rep. 261,) it was held that this section was intended solely for the protection and benefit of the corporation; that, except as against the corporation, the owner and holder of shares of stock might transfer the same as any other personalty of which he was the owner; and that a shareholder was not thereby incapacitated from transferring his stock without an entry on the books. In this case the stock certificates had been pledged as collateral security, and the rights of the pledgees were adjudged paramount to those of another, who had become an equitable owner of the stock, while the certificates were in the possession of the pledgees. In *Nicollet Nat. Bank* v. *City Bank,* 38 Minn. 85, (35 N. W. Rep. 577,) it was declared that an assignment and delivery of stock certificates, without a transfer upon the books of the corporation, invested the assignee with an equitable title which would be protected as against all parties not showing a superior right. Both of these cases are in line with the conclusion herein announced.

Finally, respondent contends that in any event the judgment below will protect the defendant corporation, should it obey the mandate, and issue a certificate to plaintiff as commanded. Such a position cannot be maintained, for it is obvious that in the trial of this case the rights of only those who were before the court could be passed upon. In an action against these defendants the court could not determine the rights and interests of another person, who may have become the *bona fide* owner and holder of the certificate issued to Mrs. Hicks. The decree below was erroneous.

Judgment reversed.