## JOHN F. BEYER v. D. C. WOOLPERT and Others.[1]

December 14, 1906.

Nos. 15,005—(116).

### Dissolution of Corporation.

Section 3175, R. L. 1905, which provides for the dissolution of a corporation upon the petition of a majority in number or interest of the members of the corporation, applies to stock corporations and to certain corporations without capital stock. The petition may be made by a majority of the members of a nonstock corporation, or by the holder or holders of the majority of the stock of a stock corporation.

### Same—Petition.

In proceedings for the dissolution of a corporation under this statute, the court cannot determine the validity of outstanding stock of the corporation. The petition must be made by the owner or owners of a majority of the stock which has been regularly issued by the corporation and not in proper proceedings adjudged invalid.

[1] Reported in 109 N. W. 1116.

**Surrender of Charter.**

> A private business corporation cannot surrender its charter and effect a dissolution without the consent of the state expressed by previous authorization or subsequent acceptance of the surrender.

Appeal by petitioner in the matter of the application for dissolution of the corporation known as the North American Coal & Mining Company from an order of the district court for Hennepin county, Dickinson, J., vacating and setting aside the proceedings. Affirmed.

The petitioner, John F. Beyer, commenced proceedings in the district court for the dissolution of the North American Coal & Mining Company, a stock corporation organized under the laws of this state. The petition alleges the organization of the corporation, its principal place of business; when, by whom, and under what law, it was incorporated, the names and addresses of the stockholders, the amount of its indebtedness, the amount and description of its real estate; that it owns no personal property and has never transacted any business; and alleges that there has been issued two thousand shares of stock, of which the petitioner owns four hundred shares. It is further alleged that said corporation was formed at the solicitation of said Herbert Williams, and upon the agreement, entered into prior to, and at the time of, the formation thereof, between your petitioner and the said Herbert Williams, that, if your petitioner would furnish sufficient money to acquire title to the lands above described, said Williams would furnish sufficient means to operate the coal mines thereon, and the same corporation would at once begin to operate the same, and all of the steps taken by said corporation and all of the money furnished by him to acquire title to said lands, and all other acts and things done by him with reference to said corporation were done pursuant to the said agreement and not otherwise; that immediately upon the organization of said corporation, the said Herbert Williams caused himself to be elected president and his wife, Lyra E. Williams, secretary thereof, and thereupon the said president and secretary issued a large amount of stock, to wit: about two thousand shares to various parties, four hundred shares of which were issued to your petitioner, and your petitioner alleges, upon information and belief, that no consideration whatever was paid for the issue of any of said shares excepting only by your peti-

tioner for the issue to him of four hundred shares of said corporate stock; that said Herbert Williams has at all times controlled all of the shares of stock so issued as aforesaid, excepting only those issued to your petitioner; that the stock so controlled by said Williams constitutes a majority of the shares of stock of said corporation, and he has been able to, and actually has, controlled and conducted all of the acts of said corporation in his own interest and for his own personal benefits; that he caused a note of said corporation for the sum of $3,000 to be executed by the officers thereof, and delivered to the Investors' Syndicate, a corporation of Minneapolis, Minnesota, and a mortgage upon said above-described lands as security therefor, to be executed and delivered to said Investors' Syndicate, which note and mortgage still remain outstanding against said North American Coal & Mining Company, and said mortgage constitutes a cloud upon the title of said corporation to said land; that said corporation and said Williams have failed and neglected to open up and operate the mines upon said lands, or to do any other act or thing toward opening up and operating such mines, and have failed and neglected even to pay the taxes upon said lands, and your petitioner has been obliged to pay the same from year to pear to protect the said property from tax sales.

*F. H. Peterson,* for appellant.

*Savage & Purdy,* for respondents.

ELLIOTT, J. (after stating the facts as above).

The appellant contends that the power to surrender its charter is inherent in the shareholders of every corporation, that they can do so without statutory authority, and that the petition here presented complies with the statutes of this state.

1. There is some authority for the rule that the stockholders of a private corporation may surrender the charter without the consent of the state, but the cases are not well considered and are unsound in principle. The grant of the franchise to be a corporation is an exercise of the sovereign power of the state. The acceptance of the grant imposes obligations which may not voluntarily be abandoned at will.

It is conceded that this is true in respect to corporations of a public or quasi public character, but it is contended that private business corporations are of such a character that the stockholders only are inter-

ested in their perpetuation. This idea ignores the contract which exists between the state and the corporation and its members. The charter of a private corporation is a contract, and like other contracts it can be made only by the mutual consent of the parties. The consent of the state is expressed in the grant, and that of the corporators in the acceptance of the privilege. The relation thus created can be terminated only by mutual consent, or by the withdrawal of the franchise under power for that purpose duly reserved. Unless the right to terminate the relation is thus reserved, it cannot be exercised by one party without the consent of the other. It follows that, so long as no ground for forfeiture exists, the franchise of being a corporation cannot be withdrawn by the state without the consent of the grantee, nor can the grantee surrender the franchise and repudiate the obligations imposed thereby, without the consent of the state. The holders of the franchise may terminate the relation by the surrender of the franchise to the state with the consent of the state, as any contract may be discharged by the mutual consent of all parties. The consent of the state to the surrender of the franchise and the resulting dissolution of the corporation may be shown by any evidence which is sufficient to show an intention to accept the surrender. The necessity for the acceptance by the state is established by the overwhelming weight of authority. It is the acceptance which gives efficacy to the surrender. 1 Blk. Comm. 485; 2 Kyd. Cor. 447; Boston v. Langdon, 24 Pick. 49, 35 Am. Dec. 292; Folger v. Columbian, 99 Mass. 267, 95 Am. Dec. 747, annotated; Mechanics v. Heard, 37 Ga. 401; Wilgus, Cases on Priv. Corp., 886, and many cases there cited.

In some states provision is made for a formal expression of the consent of the state to the surrender of the charter of a corporation. The statutes of this state recognize the importance of permitting the members or stockholders of private corporations to freely wind up the business and have the corporation dissolved. Upon proper application made to the court and a showing such as is required by the statute the court is authorized to make an order dissolving the corporation and appoint a receiver to wind up its business. This proceeding is consistent with the theory of a contract relation between the corporation and the state, and provides for the acceptance of the surrender by the state, acting through one of its organs, upon compliance with the conditions imposed

by the statute. Although this is the era of free incorporation, it will not do to lose sight of the fact that incorporation is a privilege granted by the state for a definite period which cannot be abandoned or cast aside at will without the consent of the state.

2. The statutes recognize the right of the members of a corporation to surrender the charter and prescribe the methods in which it may be done. By section 2852, subd. 7, R. L. 1905, every private corporation is empowered "to wind up and liquidate its business in the manner provided by law." The right is granted by section 2882 to the corporation and by section 3175 to individual members thereof. Section 2882 provides that:

> Whenever any corporation, except a bank of discount and deposit or a savings bank, has determined, upon the affirmative vote of a majority of each class of its stock entitled to vote, or of its members if without capital stock, that it is for the interest of all persons concerned therein that it be dissolved, it may cause appropriate action to be taken to effect such dissolution.

The appropriate action is provided by section 3175, as follows:

> A majority in number or interest of the members of a corporation desiring to close their concerns and dissolve the corporation may present a petition to the district court of the county of its principal place of business, setting forth the name of the corporation, when and by or under what law it was incorporated, the names and addresses of the bondholders, stockholders or members, and if not then transacting business, when it ceased to do so, the amount of its indebtedness, the amount and character of its personal property, and the amount and description of its real estate. It shall also state the grounds upon which dissolution is sought and the interest of the petitioner and shall pray for proper relief.

A subsequent section provides for a hearing, and, if any of the grounds specified in the petition are sustained, the court shall adjudge the corporation dissolved and appoint a receiver to close its affairs.

It is apparent, when we read these sections together, that they provide for the dissolution of a corporation upon the petition of the cor-

poration after it has been authorized by the affirmative vote of the majority of the stock or of its members if without capital stock, and upon the petition of a majority in number or interest of the members of a corporation acting independently of corporate action. The procedure in either case is upon petition as provided in section 3175. If the petition is made by the corporation, it should recite the authorization by the members or stockholders which is made a condition precedent to the right to proceed, in addition to what is required by section 3175.

The petition in this case was made by one who claimed to represent a majority in interest of the members of a stock corporation. But the petition discloses that the petitioner is a single stockholder who is the owner of but one-fifth of the capital stock of the corporation. The statute provides that a petition may be presented by "a majority in number or interest" of the members of a corporation. When read in connection with the preceding sections it is reasonably clear that it applies both to corporations with and without capital stock. When there is no capital stock, the petition must be presented by a majority in number of the members. A corporation having capital stock can be dissolved only on the petition of stockholders who represent a majority of the stock, as they only can represent a majority in interest of the members of such corporation.

Any other construction of the language would lead to the absurd conclusion that a stock corporation may be dissolved upon the petition of a number of individuals, who hold in the aggregate but an insignificant amount of stock, against the wishes of a single member who holds much more than a majority of the stock. This would be, not only unreasonable, but inconsistent with the recognized rule that the right to control a joint-stock corporation is vested in the holders of the majority of the stock.

The petitioner represents neither a majority in numbers nor interest of the members of this corporation. He represents but one-fifth of the capital stock. It is true he alleges that all the stock which has been issued to others than himself has never been paid for and was fraudulently issued. Until this fact is determined in a proper proceeding, the holders of all outstanding stock in the corporation are entitled to vote at corporate meetings, and to be heard in a proceeding of this character. Downing v. Potts, 23 N. J. L. 66. The recital in

the petition that the stock was issued without consideration is not conclusive as to its invalidity.    It was not issued in violation of a statute, and, as between the corporation and the stockholder, it may, under some circumstances, be valid.    The proceeding to dissolve the corporation is purely statutory and cannot be turned into an equitable action for the purpose of determining the validity of the outstanding stock of the corporation.    As the petition was insufficient, the prcoeedings were properly dismissed.

The regularity of the proceedings in other respects therefore requires no consideration.

Order affirmed.