# HERBERT T. PARK, SUBSTITUTED ETC. v. A. G. HUDSON AND ANOTHER.[1]

February 9, 1923.

No. 23,168.

Cancelation of mortgage—estoppel in pais—findings sustained.

Action to cancel a mortgage and a foreclosure thereof on the ground that the debt for which it was pledged as collateral security was paid. It is *held*:

(1) The evidence sustains the finding that the mortgage was executed by authority of the board of directors of the mortgagor, a corporation. The acknowledgment of this instrument by its president and secretary in the form prescribed by statute is by section 5741, G. S. 1913, prima facie proof of execution pursuant to authority of the board of directors.

(2) The finding is also sustained that defendant Deaver took an assignment of said mortgage in good faith without knowledge that it had been pledged to secure a debt, other than the one recited in the mortgage itself. The pledgor had given the pledgee full power to sell the mortgage without notice. But, it being a mortgage, the purchaser thereof took, unless estopped, subject to the mortgagor's equities and defenses.

(3) The evidence sustains the finding that the person who induced Deaver to purchase the mortgage was then the agent and representative of the mortgagor so that his representations and statements could bind the mortgagor.

(4) The finding that the mortgagor is estopped from denying that the amount represented by this agent to be due on the mortgage when purchased is sustained.

(5) Estoppel in pais is commensurate with the thing represented

[1]Reported in 192 N. W. 112.

and puts the party entitled to its benefit in the same position as if the thing represented to exist did in fact exist.

(6) Under the facts in this case plaintiff is not entitled to cancelation of the mortgage upon reimbursing defendants for what was paid for it.

(7) There is no error in the record that would warrant granting a new trial.

Action in the district court for Hennepin county for an accounting and the cancelation of a mortgage and its foreclosure. The case was tried before Buffington, J., who made findings and as conclusions of law found that the foreclosure of the McCullough mortgage by advertisement and sale to defendant Hudson constituted a valid foreclosure sale and that defendant Hudson was entitled to $13,-636.28. From an order denying his motion for amended and additional findings and conclusions or for a new trial, plaintiff appealed. Affirmed.

*S. R. Child* and *Donald E. Bridgman,* for appellant.

*James E. O'Brien,* for respondents.

HOLT, J.

In 1916 the Mortgage Land Investment Company, a corporation hereinafter called the mortgage company, owned lots on Twentyninth street and Holmes avenue in Minneapolis, and under some arrangement with it the First National Holding Company, a corporation hereinafter referred to as the holding company, erected thereon five separate apartment buildings. The enterprise involved a large expense and in December, 1916, both companies were in financial straits. Mr. A. H. Ranney was the president and the controlling power of the mortgage company and Mr. R. R. Betcher of the holding company. On four of the buildings large first mortgages were given, also several second mortgages, and over $40,000 in mechanics' lien claims were asserted against the properties. The two corporations on December 9, 1916, also owed the Metropolitan National Bank, herein referred to as the bank, $9,604.12. How much of this sum was the debt of the mortgage company is not disclosed, but it was testified that the debt of that corporation to

the bank was much larger than that of the holding company. However, Mr. Ranney claims that the latter corporation was then indebted to the mortgage company in excess of $9,600.

At any rate, prior to the date mentioned, the bank had obtained from A. H. Ranney a note and mortgage of $10,000, executed to him by one Odell and wife, covering land on Lyndale avenue south, also a $600 note to him secured by a mortgage on 160 acres of land in Roseau county, indorsed to the bank as collateral, and a note by Julia Ebert of $3,000 as collateral to a note by the mortgage company of $1,000 given to the bank. But, at the time mentioned, in a conference between Betcher, Ranney and a representative of the bank, John McCullough, it was agreed that the holding company should give its note to the bank for $9,604.12 to take up the indebtedness of the two corporations; that the mortgage company and Mr. Ranney personally should guarantee its payment, and that the collaterals mentioned, already held by the bank upon the previous indebtedness, should be retained by it as collateral upon the new note; and also that the mortgage company should give to McCullough, for the use of the bank as additional collateral, 27 notes amounting to $10,000, secured by a second mortgage on one of the buildings mentioned subject to a first mortgage of $25,000. All was done as agreed. The $9,604.12 note was dated December 9, 1916, and is hereinafter referred to as Exhibit D. The $10,000 second mortgage so given will be referred to as the McCullough mortgage. After being recorded it was assigned to the bank by the mortgagee, McCullough, and the assignment recorded. To Exhibit D was subjoined a writing, executed by the mortgage company by Ranney its president and by Ranney personally, transferring to the bank all the collaterals above mentioned to secure the payment of Exhibit D, and giving the payee and its assigns authority to collect any of the securities, and the option of such holder to collect or sell, or collect in part and sell in part any of said securities without notice. Shortly after this arrangement four of the notes of the McCullough mortgage were paid, amounting to $600.

Nothing further was paid or realized either on the collaterals or Exhibit D, and the bank began to press for payment. It finally

foreclosed the mortgage on the Roseau county land, from which no redemption was ever made, and it also brought suit against Julia Ebert and recovered judgment for about $1,100, and also started suit on Exhibit D, but no money resulted. Mr. Ranney left the state in 1917, and did not return until towards the close of 1919. When he departed the affairs of the mortgage company were entrusted by him to Mr. Betcher, except it appears that Thorpe Bros., the agent representing the first mortgagee on the building here involved, was collecting the rents therefrom, but it is not shown who originally authorized this or for what purpose. Early in 1919, while the action on Exhibit D was pending, negotiations for a settlement began and the bank finally agreed to accept $6,500 as payment in full.

It appears that in April, 1919, the bank transferred to Betcher the Odell mortgage. The evidence in respect to this transaction is somewhat hazy, perhaps, because not deemed important in the present action. As stated, this mortgage ran to Ranney and had originally been pledged by him to secure an indebtedness of the mortgage company. There appears to have been some serious defect in the title to the land covered so that the bank could not realize on it; but, after the mortgage was transferred by the bank to Betcher, the title was perfected by him, with the aid of Henry Ebert, who had acted as attorney for the mortgage company, in a son and daughter of Betcher; the Odell mortgage was satisfied; and from the proceeds of a new mortgage of $11,000, given by the said son and daughter upon the land, Betcher paid the bank $4,000 on the agreed settlement; the balance he devoted to other personal matters. Whether this dealing in the Odell mortgage was in violation of the rights of Ranney seems to be involved in a lawsuit pending between the latter and Betcher. It is not necessary to indulge in speculation as to how Ranney came to own either the Roseau county mortgage or the Odell mortgage, or as to whether those mortgages were executed by some stool pigeon of Betcher for the purpose of assisting either one of the corporations named to maintain its credit at the bank. For more than a year previous to August, 1919, Betcher sought to dispose of the McCullough mortgage to the de-

fendant Deaver, an attorney engaged for many years in the business of real estate loans. These efforts of Betcher to dispose of the collaterals were evidently in the interests of the bank and both corporations and with the approval of all. The negotiations culminated about August 15, 1919, when Deaver agreed to buy for $3,000, so he testified, the McCullough notes and mortgage and the Roseau county land, title of which had been obtained through the foreclosure of the $600 mortgage mentioned. When it came to the actual transfer of the mortgage and land, the bank would not make the instruments direct to Deaver or his client, W. O. Jackson, but made them to Betcher with whom it had had its dealings. Deaver gave a check of $2,000 to the bank and he claims some small checks to abstractors and sundries, and the balance of $3,000 was paid to Betcher by two checks which he requested to be made payable to Deaver and indorsed by him.

In the fall of 1919, some inquiry was made of Deaver by and in behalf of Ranney as to how the McCullough mortgage was acquired and held, but nothing definite was learned. In 1920 the difficulties of the mortgage company resulted in the appointment of a receiver. Nothing being paid on the McCullough mortgage except as above stated, it was, to facilitate foreclosure, assigned by Jackson, a nonresident, to A. C. Hudson, Deaver's partner, who proceeded to foreclose the same by advertisement. Thereafter this action was brought, early in January, 1921, by the receiver of the mortgage company against Hudson and Deaver to enjoin the sale and to cancel the mortgage. The court denied a motion to restrain the sale, and it took place January 20, 1921. Subsequently a supplemental complaint was permitted alleging that the sale had occurred and that the year of redemption would expire January 20, 1922, and asking judgment for cancelation of the mortgage and all proceedings based thereon, and for other relief. There was an answer setting up a defense. The trial resulted in findings in favor of defendants. From an order denying amendments of the findings or a new trial, plaintiff appeals.

The above is a skeleton of the transactions involved. The assignments of error are too many to separately notice or discuss. The

controlling findings of fact are comparatively few, and the applicable principles of law are not much in doubt. But, for an understanding of the questions presented by the appeal, some reference must be made to the issues as made by the pleadings. In the final amended supplemental complaint it is alleged that Betcher was at all times therein named the general manager of the holding company and was also from the date of the McCullough mortgage to October, 1919, an agent of and in control of the financial transactions of the mortgage company and was also a confidential agent at all times of its president, Mr. Ranney, and that Ranney was out of the state in 1918 and up to October, 1919, during which time Betcher undertook to look after Ranney's interest in the mortgage company. It is then alleged that in August, 1919, the holding company paid the bank the amount owing on Exhibit D, and that Betcher wrongfully procured the assignment of the McCullough mortgage to himself; that Jackson and defendants well knew these facts and in spite thereof procured the assignment of the mortgage and caused it to be foreclosed and Hudson bid in the property on January 20, 1921, for $12,626.19, claiming that to be the amount due on said mortgage. It is alleged that the mortgage was not executed by the mortgage company.

The answer sets out the circumstances in connection with the giving of Exhibit D and the McCullough mortgage and notes, together with the agreement whereby the bank was authorized to sell and dispose of the same; that when Deaver purchased the McCullough notes and mortgage for W. O. Jackson he made inquiries as to the value thereof and the amount due thereon and learned that only $600 had been paid, and that Jackson knew nothing in reference thereto except what he learned through Deaver. It is also alleged that in an action foreclosing mechanics' liens on the property covered by the McCullough mortgage, the mortgage company and the bank were parties, and therein it was decreed that the said McCullough mortgage was a valid lien of the bank for $10,091.42, subject only to a first mortgage of $25,000, and certain mechanics' liens therein established, that Deaver knew of and examined this judgment when he negotiated for and purchased

said notes and mortgage; that the mortgage company could have asserted in that action the invalidity and want of consideration for this McCullough mortgage; that defendants and Jackson, at all times until long after the assignment of the McCullough notes and mortgage by the bank, understood and believed that the same were exactly what they purported to be on their face and were executed for a full and valuable consideration, and that the mortgage was executed by the mortgage company to secure the indebtedness evidenced by the notes, and did not know that they were made to secure a prior indebtedness and had no reason to so believe. Then it is alleged that the mortgage company not only placed the said mortgage and notes in the hands of McCullough and the bank for the express purpose of being sold by them to raise money for the use of the bank and the mortgage company, but that the latter, at the times Deaver was negotiating for the purchase of said mortgage and notes, encouraged Deaver to buy the same and withheld from him and the other defendant and W. O. Jackson all information with reference to the true character of the mortgage and notes; and that the transfers from the bank to Betcher and from Betcher to Jackson were made with the knowledge, consent and acquiescence of the mortgage company.

We will notice only those of the challenged findings of fact which if found sustained by the evidence appear to us to be determinative of the appeal in respondents' favor. It is not necessary to set them out in full. We, however, consider those not herein mentioned to be amply sustained.

The court found the execution of the McCullough notes and mortgage to have been duly authorized by the board of directors of the mortgage company. The production of the mortgage, wherein the notes were recited, signed and sealed in behalf of the mortgage company by its president and secretary, and duly acknowledged by those officers in the form prescribed in section 5740, G. S. 1913, is, by section 5741, prima facie proof that the instrument was executed by authority of the board of directors of the corporation. Ranney's testimony on the stand that it had not been authorized should avail little against this acknowledgement and oath taken

by him before the notary, who was also the attorney of the mortgage company, and against the positive testimony of one of the directors that the giving of this mortgage was discussed and authorized at a directors' meeting. Besides, the articles of incorporation and by-laws indicate that one of the businesses of the corporation was to execute mortgages as its interests might require, and that the president may sign its notes and other evidence of indebtedness necessary for its transaction of business. There can be no question that the necessity of the business of the mortgage company required the settlement with the bank and that there was adequate consideration for the execution of the McCullough notes and mortgages in the facts already recited.

The court also found, in substance, that Deaver purchased the McCullough notes and mortgage in good faith and without knowledge that they were collateral to Exhibit D, paying therefor and for the Roseau county land $3,000. This finding is assailed. It is said the court should have found that Deaver made a loan of $3,000 to Betcher and accepted what was transferred to him or his client as security merely. It is enough to say that no such issue was tendered. The complaint contains no claim that Deaver's transaction was either a loan to Betcher or anyone else or that it was a purchase of Exhibit D, but did allege that it was a payment of Exhibit D. It is not necessary to refer to Jackson or Hudson in the discussion of the facts or the law for the whole deal was conducted by Deaver, and his knowledge and acts in seeking or not seeking information concerning the property involved must be imputed to them. As some of the notes were past due and no interest had been paid on any, the purchaser cannot claim the rights of an innocent bona fide holder in due course under the negotiable instruments law; and under our decisions the assignee of a mortgage takes subject to the equities and defenses of the mortgagor. Redin v. Branhan, 43 Minn. 283, 45 N. W. 445. But that does not preclude a finding that Deaver made the purchase in good faith in that he had no actual knowledge that the McCullough notes and mortgage were collateral to Exhibit D or any other debt. It stands to reason that Deaver, with the experience he had had, and in the line of busi-

ness in which he is, would neither loan money on mere subpledges nor purchase the same. But even if he could have been induced so to do, he certainly would not have done it without also procuring the principal note, that is, Exhibit D. It is true, Mr. Ebert testified that before the deal was made he showed Deaver a copy of Exhibit D and informed him of the true situation. There is some corroboration from A. S. Keyes. This was denied in toto by Deaver, who testified that he was informed by Betcher that there had been paid only $400 on the McCullough mortgage; that he relied on that information and never heard anything to the contrary, until the time he was closing the deal, when he learned from the bank that $600 instead of $400 had been paid, and that he never knew of Exhibit D. Appellant placed Betcher on the stand, but no attempt was made to deny Deaver's testimony by that witness. Deaver also examined the judgment roll in the foreclosure of the mechanics' liens above mentioned, wherein it was adjudged that the McCullough mortgage, held by the bank and executed by the mortgage company, was an existing encumbrance to the extent of $10,091.42 upon the premises. There were other matters properly for the consideration of the trial court bearing on the question of Deaver's good faith in the purchase of this McCullough mortgage, such as the uncertain value of the mortgage at that time, subject as it was to a first mortgage of $25,000 and mechanics' liens exceeding $3,200 and some taxes. Mr. Crane, the attorney for the bank, also corroborates Deaver in that he testified positively that Deaver asked Barton, the officer of the bank who received the $2,000 check from Deaver and delivered the bank's assignment of the McCullough mortgage and notes, whether the bank had the right to sell the same. The fact that the bank assigned the notes without recourse and in the assignment did not covenant that any sum was due, does not as a matter of law indicate bad faith. It would not have so indicated in case of negotiable paper before due, and ought not as-to past-due paper. Collins v. McDowell, 65 Minn. 110, 67 N. W. 845.

The next important finding was that from the fall of 1917 to October, 1919, Betcher was the agent of and in control of the finan-

cial transactions of the mortgage company. The finding is in the very terms of the allegations of the complaint, yet plaintiff now assails it. The testimony of Ranney sustains the finding. So also do the surrounding circumstances. The two corporations concerned in the building operations herein referred to were evidently "one man" corporations. Admittedly the holding company was a Betcher contrivance by which to do his business. The inference is strong that the mortgage company was a Ranney concern. Betcher and Ranney were close friends and no doubt worked in harmony up to Ranney's return from the east in the fall of 1919. One Weiser, who appears to be a mere figurehead, was president of Betcher's corporation and at the same time secretary of the mortgage company. A stockholder and perhaps officer in the latter was one Kreofshy, apparently either a tool or dupe of Betcher. It is quite clear that the two corporations were handled by Ranney and Betcher in concert and in full harmony up to the time of Ranney's departure in the fall of 1917, and that then the whole management was turned over to Betcher, who had as a legal adviser and assistant Henry Ebert, and, to some extent, A. S. Keyes, who theretofore had acted as attorneys for the mortgage company and Ranney. Ranney testified that during his absence from the state Betcher wrote him that he was acting for the mortgage company. To the question: "Was it your understanding when he wrote you in regard to Mr. Deaver that he was acting for the Mortgage Land Investment Company?" Ranney answered: "And for A. H. Ranney." Again the attorney put this question to him: "So that it was your understanding at that time and is now that Mr. Betcher at the time he had his dealings with Deaver in connection with the taking of the assignment of the McCullough mortgage and the McCullough notes was acting as the agent of the Mortgage Land Investment Company?" Answer: "Yes, sir." Here the president of the mortgage company, who confessedly managed and controlled it, testifies that Betcher wrote him that he was negotiating with Deaver in behalf of the company and was acting for it, but nowhere does he claim that he, in any manner, disapproved of the capacity in which Betcher proceeded. On the contrary, he, at one time while on

the witness stand, claimed that Betcher in the sale of the collaterals had from the proceeds bought Exhibit D for his, Ranney's, benefit. The inference from the record is that the mortgage company and the holding company were in such straits in the fall of 1917 that Ranney departed and gave up in despair. No officer of the mortgage company seems to have taken any interest in its affairs, and Betcher was left to shift as best he might. All concerned acquisced, and Betcher could do as he pleased until in the fall of 1919, when rents began to soar to unknown heights and a corresponding increase in the value of buildings developed.

The finding which ultimately turned the decision in defendants' favor is estoppel in pais, and that, of course is challenged. The finding is: "The Mortgage Land Investment Company is estopped by its conduct and representations in relation to said McCullough mortgage and notes from asserting as against either of these defendants that said mortgage was given without consideration, or existed other than as direct security for the notes and indebtedness therein described, or from asserting as against these defendants, or either of them, that said indebtedness, or any part thereof, save the sum of Six Hundred ($600.00) Dollars, had been paid or discharged before the sale thereof to said Deaver and said Jackson."

Estoppel in pais may be invoked and operates in the same manner upon nonnegotiable choses in action as upon negotiable commercial instruments before maturity. Colebrooke, Collateral Securities §§ 432-440. And Chief Justice Start in Moffett v. Parker, 71 Minn. 139, 73 N. W. 850, 70 Am. St. 319, states the rule [at page 144] thus: "It is not always true that the assignee of a mortgage takes it subject to defenses between the original parties. The conduct and acts of a mortgagor may be such as equitably to estop him from asserting a defense against the assignee which would be open to him as against the mortgagee. Where one, by his wilful or fraudulent conduct, causes another to believe in the existence of certain facts, who is thereby induced to act on the belief, and does so in good faith and parts with his money in reliance thereon, the former is estopped from denying the existence of such facts." Marling v. Fitzgerald, 138 Wis. 93, 120 N. W. 388, 23 L. R. A. (N. S.) 177, 131 Am. St.

1003, perhaps goes further than necessary to sustain the court below. We do not think the decision of Brown v. The Equitable Life Assur. Soc. 75 Minn. 412, 78 N. W. 101, 671, 79 N. W. 968, applicable to the facts herein. As already pointed out, since the findings to the effect that Deaver was a good faith purchaser without knowledge of the collateral character of the mortgage are sustained by the evidence, he is in a position to invoke estoppel in pais. Many of the facts which enter into a finding of such estoppel have already been mentioned. It is true that the estoppel which goes no farther than that the bank had authority to sell and pass good title to the McCullough notes and mortgage would not protect Deaver in claiming more than would have paid Exhibit D or reimbursed him for what he parted with, Moore v. Metropolitan Nat. Bank, 55 N. Y. 41. Although that proposition does not appear to have been raised at all in the court below, it is in appellant's reply brief. We therefore look to see whether there is a basis for a finding that the mortgage company has precluded itself from denying that there was less than $9,400 and interest due upon the McCullough mortgage when Deaver bought, in order to justify the decision herein, for to that extent the mortgage was held to be a lien upon the premises mortgaged. The rule is thus stated in 2 Pomeroy, Eq. Jurisprudence (4th ed.) § 813; "The measure of the operation of an estoppel is the extent of the representation made by one party and acted on by the other. The estoppel is commensurate with the thing represented, and operates to put the party entitled to its benefit in the same position as if the thing represented were true." To the same effect is Bigelow, Estoppel (6th ed.) § 9, p. 710. In Grissler v. Powers, 81 N. Y. 57, 37 Am. Rep. 475, the court [at page 51] states:

"We are of opinion that as a general rule, the estoppel created by a false representation acted upon, is commensurate with the thing represented, and operates to put the party entitled to the benefit of the estoppel in the same position as if the thing represented was true, and that when the representation is made on the sale of a chattel or security, the remedy of the purchaser is not limited to a recovery simply of the money advanced, if the purchaser would receive a benefit beyond that, if the fact had been as represented."

The court found in accord with plaintiff's allegations that in the dealings with Deaver for the sale of the McCullough notes and mortgage Betcher was the agent of the mortgage company. There is no denial of the representation by Betcher that only $400 had been paid on the mortgage, save that Deaver ascertained from the bank an additional $200 had been paid. Under the principle stated, the mortgage company should now be estopped to deny that there was less due thereon. Deaver bought relying on the representation that $9,400 and interest was due. It is true that the court might have found Deaver's testimony untrue, and that of Henry Ebert true and then the plea of estoppel would have failed in this respect. But the court did not so find.

It is said the consideration paid by Deaver is so small as to throw suspicion on his bona fides. It rather appears to us that the situation, of which there is no dispute, shows that Deaver took a chance of losing what he paid out, unless the property increased so that it would be worth while to redeem from the lien foreclosure sale, and that was one of the inducements in the purchase of the mortgage. Is it reasonable to suppose that the bank would have waited so long on the overdue note, Exhibit D, without receiving even interest, and finally agree to accept $6,500 thereon when over $11,000 was due, if it had been possible to realize any thing by sale or otherwise out of this or the other collateral? Banks do not do business that way. It had sued on the Ebert note, but that brought no money, neither did the foreclosure of the Roseau county mortgage.

It may be urged that since Deaver was informed by Betcher that he, Betcher, had agreed to buy the McCullough mortgage from the bank, therefore Deaver had no right to assume or rely on Betcher's authority to make representations in behalf of the mortgage company. But when the mortgage company or its receiver comes into court for relief against the assignee of a mortgage which the company has duly made and authorized another to sell and which the assignee has been induced to buy upon the representation of a person having the control of the sale to the assignee that a certain amount is unpaid thereon, the mortgagor should be held estopped to deny that such is the amount due upon it being established that the one

making such representation was in fact the agent of the mortgagor, even though not known to be such by the assignee when the deal was effected. An unknown principal may be bound by the act of his agent. In view of the allegations of the complaint and the findings of the court of the actual agency of Betcher, the argument and authorities of appellant that the acts of the agent must be within the scope of his employment are beside the point at issue. Not only was the agency here established, but Ranney and the mortgage company seem to have ratified the sale to Deaver with full knowledge of what had been done. The bank's suit upon Exhibit D had not been settled or dismissed in August, 1919, when the McCullough notes and mortgage were transferred by the bank. There was only an agreement to settle upon which $4,000 had been paid. On November 19, 1919, Exhibit D was delivered to Ranney, on the bank receiving this writing reciting the receipt of the said note "and also received from said bank all collateral mentioned in said note and the undersigned hereby approves and confirms any and all assignments and conveyances of all said collateral described in said note to R. R. Betcher by said bank, and in consideration thereof I hereby release said bank in full, but reserve and do not release in any way any and all claims, if any, against R. R. Betcher.

Witnesses

A. H. Ranney.                        Henry Ebert,
. Jay W. Crane,           ı         Mortgage Land Investment Co.
                                     By A. H. Ranney, Pres."

Thereupon on November 24, 1919, the action was dismissed. Of course, this transaction subsequent to Deaver's purchase in itself does not tend to create an estoppel, but is evidence of the authority of Betcher to act for the mortgage company. What, however, has a direct bearing on the proposition now discussed is the judgment in the lien foreclosure action mentioned, wherein both the mortgage company and the bank were parties and the amount due on this mortgage was adjudicated. Subsequent to that judgment and in reliance thereon Deaver acquired the mortgage. It is unnecessary to determine whether this is not estoppel by judgment, for we are

of the opinion that, taken in connection with other evidence in the case, it amply justifies a finding of estoppel in pais.

Plaintiff cites numerous cases to the effect that estoppel cannot be used further than is necessary to protect defendants against loss. Adler v. Pin, 80 Ala. 351; Lindsay v. Cooper, 94 Ala. 170, 11 South. 325, 16 L. R. A. 813, 33 Am. St. 105; American Dock and Imp. Co. v. Trustees of Public Schools, 35 N. J., Eq. 181; Bolitho v. East, 45 Utah, 181; Green v. Stevenson (Tenn.) 54 S. W. 1011; Llano Granite & Marble Co. v. Hollinger (Tex. App.) 212 S. W. 151. These cases state principles of law that are not in dispute, but do not touch the point involved in this case. The estoppel here is directed to the amount due upon the mortgage. That fact was of prime importance to Deaver, when acquiring property of so uncertain intrinsic value, upon which the only prospect to realize any profit, or anything at all, was the mere hope that in the future the value of the premises, covered by heavy prior encumbrances, might increase. Had depression instead of a boom come, the McCullough mortgage and notes would have been wholly worthless. Under such a situation it cannot well be claimed that defendants are invoking the equitable doctrine of estoppel as a weapon of offense and not as a shield. Plaintiff did not come into court offering to do equity. Not until his reply brief in this court does it appear that any suggestion of reimbursing defendants is made.

We have examined the assignments of error relating to rulings at the trial, but find none that should serve as a basis for a retrial. Mr. Ebert testified that he had seen a written agreement between Betcher and Deaver covering the deal for the McCullough mortgage. Betcher and Deaver denied that such writing existed. Ebert was asked to give the contents. An objection that no foundation had been laid was sustained. We think there was no reversible error in this. The laying of a foundation for parol proof of the contents of a writing rests largely in the discretion of the trial court. This was a trial to the court and the court, in a measure, could consider what effect the proffered proof would have upon his mind.

The order is affirmed.