MORTGAGE LAND INVESTMENT COMPANY AND OTHERS
v. E. R. McMAINS AND OTHERS.
E. R. McMAINS AND OTHERS v. L. H. MORSE AND OTHERS.[1]

July 8, 1927.

No. 25,735.

**Transfer of stock.**

1. The evidence supports a finding that certain corporate stock was validly issued.

The transfer of corporate stock on the books of the corporation is for the protection and benefit of the corporation.

As between the parties a transfer is good without any book entries.

**Proper parties in equity proceeding to cancel stock.**

2. In equity proceedings, all persons whose rights may be injuriously affected by the proposed decree should be made parties to the action.

When stockholders sue to cancel stock of a corporation the corporation should be made a party.

Upon the facts stated in the opinion, the parties voluntarily litigated the validity of corporate stock and cannot be heard to raise the question of the corporation's not being a party to but one of two actions being tried together.

**Cancelation of stock illegally issued.**

3. Appellants wilfully and deliberately caused corporate stock to be issued to them without authority or sanction of law in carrying on an open fight for corporate control. *Held* that the stock could be canceled without restitution for legal services claimed to have been given for the stock.

**De facto officers.**

4. De facto officers cannot invoke the aid of their own acts as such to promote their individual interests. The doctrine of de facto officers is applicable when third persons are involved and not in case of direct attack.

[1]Reported in 215 N. W. 192.

**Admissibility of declarations of officer of corporation.**

   5.   Relative to when declarations of an officer of a corporation are admissible against the corporation, the rule of Longman v. Anderson, 160 Minn. 15, followed.

**When party seeking cancelation of stock is not required to do equity.**

   6.   Where stock is canceled because it came into existence without authority of law and through the instrumentality of those who hold it, those who seek to have it canceled are not called upon to do equity.

**When equity will interfere with acts of corporate officers.**

   7.   While courts of equity will not interfere with the action of corporate officers as to acts within their powers and which involve an exercise of discretion committed to them, it will stay those acts which are in excess of authority or in violation of their trust.

   The trial court must, when requested, find one way or the other upon material issues.

   Appeal and Error, 4 C. J. p. 702 n. 53.
   Corporations, 14 C. J. p. 490 n. 1; p. 752 n. 55; p. 753 n. 71; p. 941 n. 24; 14a C. J. p. 79 n. 4; p. 80 n. 18 New; p. 84 n. 75, 78.
   Equity, 21 C. J. p. 178 n. 50; p. 260 n. 16.
   Evidence, 22 C. J. p. 387 n. 50; p. 388 n. 53.
   Trial, 38 Cyc. p. 1957 n. 33.

   See 7 R. C. L. 262; 2 R. C. L. Supp. 332.

   Two actions in the district court for Hennepin county in which the plaintiffs in the first action and the defendants in the second appealed from an order, Fesler, J., denying their motion for a new trial.   Affirmed.

   *S. R. Child, H. E. Fryberger,* and *Donald E. Bridgman,* for appellants.

   *Seth Lundquist, Ludwig Solem,* and *Selover & Mansfield,* for respondents.

   WILSON, C. J.

   Plaintiffs in the first above entitled action and defendants in the second appealed from an order denying their motion for a new trial.

The Mortgage Land Investment Company, a Minnesota corporation, was organized in July, 1915, with a common capital stock of $25,000 with shares of the par value of $50. It has been in the hands of a receiver since 1920. Upon incorporating, certificates of common stock were issued as follows: Nos. 1, 2, 3, and 4 for one share each to C. M. Winslow, S. E. Ranney, Fred Kreofsky and S. Weiser, respectively, and No. 5 for three shares to A. H. Ranney. On December 6, 1915, at the first annual meeting certificates for additional common stock were issued as follows: Nos. 6, 7 and 8 for one share each to H. C. Snyder, E. R. McMains and A. H. Ranney, respectively. On February 15, 1916, two additional certificates for 40 shares each of common stock were issued and delivered in the name of one C. Young. At the time of trial the corporation stock was owned as follows: A. G. Hudson, 2 shares; S. E. Ranney, 1 share; Midland National Bank, as guardian of Fred Kreofsky, 1 share; Sherman Child, 1 share; Roger S. Hume, as executor of the estate of A. H. Ranney, 4 shares; E. R. McMains, 1 share; and C. S. Deaver, 80 shares.

At the first annual meeting of stockholders, A. H. Ranney, H. C. Snyder, E. R. McMains, Fred Kreofsky and S. Weiser were elected directors. At the second annual meeting, December 6, 1916, the above directors were re-elected, with the exception of H. C. Snyder, who was succeeded by S. E. Ranney who was not a stockholder. No annual meeting of stockholders was held in 1917 or 1918. In December, 1919, an attempt was made to have an annual meeting, but a controversy arose, which developed into a quarrel, and the meeting broke up without any corporate business being transacted. Those present represented but 6 of the 90 shares which had then been issued. · Thereafter no meetings of stockholders were held of which notice was given, as required by the by-laws of the corporation, to E. R. McMains, or to the record or actual owner or holder of the 80 shares of stock then owned by C. S. Deaver, or to H. C. Snyder or C. M. Winslow or to their assigns.

The directors did not meet as they should have following the annual meetings in 1917, 1918 and 1919, and no meeting of a duly elected and qualified board of directors has been held since 1919.

The corporation owns real estate, upon which are located five apartment buildings of the value of $200,000 to $300,000 subject to a mortgage of $145,000.

In July, 1923, E. R. McMains, A. G. Hudson and C. S. Deaver executed, issued and published in a daily financial newspaper a "notice of call for special meeting of the stockholders of Mortgage Land Investment Company." It recited the death of the president of the corporation and that the purpose of the meeting was to elect members to the board of directors. Thereupon the first above entitled action was commenced to cancel the stock owned by McMains, Hudson, Deaver and Betcher, and a temporary injunction, which is still in force, was issued preventing said persons from holding the proposed stockholders' meeting during the pendency of the action.

In January, 1924, the second action was commenced to restrain the defendants therein from holding stockholders' meetings and to cancel stock which they claimed to own. A temporary injunction was denied.

The appellants have what purports to be certificates of stock of the corporation as follows: Henry Ebert, 2 shares; E. E. Little (a daughter of Henry Ebert), 2 shares; Sherman Child, 1 share; James E. Carr, 1 share; L. W. Child, 1 share; S. W. Child, 10 shares; H. E. Fryberger, 70 shares and 10 shares; S. E. Ranney, 1 share; M. W. Evans, on order of S. R. Child, 70 shares (herein referred to as Child's stock); W. C. Brooks, 1 share; and L. H. Morse, 1 share. The court found that, except in cases of reissues, certificates of this stock were not authorized by any legal board of directors and were not executed by legally elected officers. Much of this stock was issued without consideration. This group claims that the board of directors consists of L. H. Morse (president), Henry Ebert, Sherman Child (secretary), S. E. Ranney, and James Carr. The court ordered judgment for the cancelation of the alleged shares of this group, including four certificates of 5 shares each issued to one Vaughan and one certificate for 1 share issued to A. H. Ranney. Vaughan paid the corporation $1,000 for his

stock which had been issued in April, 1920. This group represents valid stock as follows: Kreofsky, 1 share; A. H. Ranney, 4 shares, and perhaps the S. E. Ranney 1 share.

1. Appellants attack the sufficiency of the evidence to support the finding that the issuance of the C. Young (now Deaver) 80 shares of stock was valid. They point to the testimony of Henry Ebert and accuse Betcher of stealing these certificates after procuring their execution by representing that Young was to pay $4,000 in cash therefor. The transfers of this stock were not made in the usual way upon the books of the corporation.

However, Rosa Vaaler, who acted as secretary of the meeting of the board of directors in February, 1916, testified that a resolution was passed authorizing this issue of 80 shares to Young. She also testified that Ranney and Weiser were present and executed the certificates with full knowledge, and that Ranney gave instructions as to the credit of the $4,000 with the First National Holding Company. Betcher's testimony confirmed this and he said the minutes were transcribed by Miss Vaaler and put in the minute book, loose. He said they were signed by Weiser as secretary. A. H. Ranney made admissions to several witnesses tending to support the integrity of the issue of the 80 shares. The book entries of the $4,000 support this contention. The corporation owed the First National Holding Company with whom it was given full credit on account for the $4,000. It managed the buying of the material and the construction of the apartment buildings. The holding company, being the owner of the stock, hypothecated it with its creditor, the National Manufacturers & Supply Company, from whom it bought building material, which caused it to be issued in the name of C. Young, one of its employes. Upon the payment of the indebtedness for which this stock was held as security the stock was returned to the First National Holding Company, which had a right to sell it. Subsequent transfers carried it to Deaver, who paid $3,000 therefor.

The delay in making a transfer upon the books of the corporation is not a controlling circumstance. As between the parties, a transfer of corporate stock may be made the same as any personal prop-

erty without any book entries. Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261, 276; Joslyn v. St. Paul Distilling Co. 44 Minn. 183, 186, 46 N. W. 337; Nicollet Nat. Bank v. City Bank, 38 Minn. 85, 35 N. W. 577, 8 A. S. R. 643. Indeed the issuance of the certificate through its regular officers to a person therein named is an affirmation by the corporation as to his ownership and is a continuing affirmation that the stock is valid. Joslyn v. St. Paul Distilling Co. 44 Minn. 183, 46 N. W. 337; Weniger v. Success Min. Co. (C. C. A.) 227 F. 548; Windram v. French, 151 Mass. 547, 24 N. E. 914, 8 L. R. A. 750; Fifth Avenue Bank v. Forty-Second Street & G. St. Ferry R. Co. 137 N. Y. 231, 33 N. E. 378, 19 L. R. A. 331, 33 A. S. R. 712; First Avenue Land Co. v. Parker, 111 Wis. 1, 86 N. W. 604, 87 A. S. R. 841. The transfer of the stock on the books of the corporation is for the protection and benefit of the corporation so that it may know with whom to deal as stockholders and who have a right to vote as such; and as against the corporation, the transfer of stock is ineffectual until made on its books. Morrill v. Little Falls Mfg. Co. 53 Minn. 371, 55 N. W. 547, 21 L. R. A. 174. It is claimed that it is for the stockholders who attend a meeting to determine who shall vote. But that is only when there is a valid meeting and there is no contrary rule established by the charter or by-laws. State ex rel. Martin v. Chute, 34 Minn. 135, 24 N. W. 353.

The authorities, to the effect that certificates of stock are not negotiable in either form or character, are not applicable. Each succeeding purchaser of such corporate stock gets just what his vendor legally and equitably has to sell, and no more. But the corporation has no defense to the validity of this stock.

This finding of the trial court is amply supported by the evidence.

2. In the second action appellants assert that the court could not cancel their stock because the corporation was not a party. The rule is that when stockholders sue to cancel stock of a corporation the corporation should be made a party. 5 Fletcher, Cyc. Corp. 5764, § 3485; Campbell v. Morgan, 4 Ill. App. 100; 14 C. J. 941; Shaw v. Staight, 107 Minn. 152, 119 N. W. 951, 20 L.R.A. (N.S.)

1077. In equity proceedings, all persons whose rights may be injuriously affected by the proposed decree should be made parties to the action. The corporation is the representative of all who own any of its stock. It is a party to the contract. It has rights and duties in reference thereto.

The validity of the stock of each group is the main issue in both actions. The corporation was a party plaintiff in the first action. Upon the trial the receiver of the corporation concluded to dismiss the action but consented to remain only on condition that the parties agree not to tax costs and disbursements against him, to which the parties consented. Respondents' answer in the first action challenged the legality of the stockholders' meetings held since December 6, 1916, and alleged that any and all pretended meetings and proceedings claimed to have been held since that date were illegal and void. They might well in that answer have sought the same relief which they sought in the second action wherein appellants' answer alleged "That the issues which the said McMains, et al., are attempting to raise in   *   *   *   [this] action are all embraced in the former suit commenced by said company in July, 1923," which is the first action. Upon the trial counsel for appellants stated to the court,

"There are two actions, not identical, but involving very nearly the same issues. In fact, there is one issue in this case that would decide both cases, and that is the question of whether or not Hudson and Deaver and McMains are stockholders."

In the colloquy which took place when the cases were called for trial the court said:

"I think it is the intention of the judges of this court that I shall dispose of any matters in connection with these cases."

The court also said that all evidence taken in the first case would be used, in so far as applicable, in the second case. Both cases were tried as one. The court did not make separate orders but covered both cases by one decision. All the parties, including the corporation, were before the court. According to the findings

of the court the respondents were substantially the only persons who could have selected the proper officers to represent the corporation, other than the receiver, who was in court. There have been many controversies between these parties arising out of this property which has precipitated other litigation. Minneapolis Holding Co. v. Landers-Morrison-Christenson Co. 141 Minn. 127, 169 N. W. 534; Park v. Hudson, 154 Minn. 471, 192 N. W. 112; Matchan v. Phoenix Land Inv. Co. 159 Minn. 132, 198 N. W. 417; Matchan v. Phoenix Land Inv. Co. 165 Minn. 479, 205 N. W. 637; Betcher v. Midland Nat. Bank, 167 Minn. 484, 209 N. W. 325.

We construe the record as meaning that all the parties and the court intended to conclude in this action the controversies between these parties and to determine the rights of every person before the court included in the issue in either case. The validity of appellants' stock was one of the main issues, and we hold that that question was voluntarily litigated by appellants and they cannot now be heard to raise the question of the corporation's not being a party to the second action. They have in no way been prejudiced thereby. They have had their day in court. In fact they did not complain until the decision indicated that they did not control the corporation. The record is convincing that all parties supposed they were litigating this very question.

3. Upon this general theory of the matter which was before the court it attempted to pass upon the matter in issue as between the parties. It gave judgment for the cancelation of the stock of Julia Vaughan. She was not a party to the action. Incidentally the court said she would stand as a creditor to the extent of $1,000 which she had paid for the stock. Appellants point to this finding as inconsistent with the refusal to order restitution to Fryberger and Child as a condition precedent to the cancelation of their stock. Appellants are not concerned with the Vaughan stock or the power of the court in this action in reference thereto. The cases are not parallel and furnish no ground upon which error can be predicated.

Fryberger and Child claim that their stock was given for legal services and that they must be paid before equity will cancel the stock. We think not. Under the findings the issuance of their stock was never legally authorized. They were not led into accepting the stock. They were the leaders and advisers of their group. They were within the terse comment of the trial court:

"The conduct and maneuvers of the adverse groups were rather that of men of much ability and finesse measuring their wits within the law, feinting here and there, sometimes probably equivocating, asking no favors and granting none, going through to the end and willing to stand or fall on their legal rights."

Fryberger and Child acted at their peril. Their conduct offers no special appeal to equity. This is not an ordinary case where it is sought to cancel stock accepted by an attorney in good faith for legal services furnished. The findings are that these men brought about the unauthorized issuance of this stock. Their acts were wilful and deliberate.

In Minnesota every director of a corporation must be a stockholder. G. S. 1923, § 7458. The by-laws of this corporation provide:

"No business shall be transacted at any meeting of the stockholders unless a majority of the stock issued by the corporation is represented, either by person or by proxy."

The statute and the by-laws have been flagrantly violated. Holders of stock are entitled to vote until the invalidity of their stock has been judicially determined. Beyer v. Woolpert, 99 Minn. 475, 109 N. W. 1116; Hoffman M. T. Co. v. Erickson, 124 Minn. 279, 282, 144 N. W. 952. Fryberger and Child were the men who steered this corporation along its illegal channel, and the conscience of equity is not shocked by leaving them to their remedy at law which may involve a trial by jury. Indeed the issue involved the validity of their stock but not the question whether the corporation was indebted to them. This branch of the case was ended when it was found that the stock was invalid—its cancelation necessarily fol-

lowed. Whether these men took this stock to make profit, or to retain control of the corporation, or as fees for services which they were rendering at their own request, is not important. Their motive, under the circumstances, does not control. The plain fact is that they took it without authority or sanction of law in carrying on their open fight for supremacy. It is not urged that a cancelation of corporate stock could be had, where the officers, or de facto officers, in good faith issue it to a lawyer who receives it in good faith and renders legal services therefor, without paying the value of the services. That is not this case.

4. It is urged that the officers in appellants' group were to be considered as de facto officers. We think not. The doctrine of de facto officers is "one of those legal makeshifts by which unlawful or irregular corporate and public acts are legalized for certain purposes on the score of necessity." 3 Fletcher, Cyc. Corp. §§ 1833, 1834. It is one who is reputed to be such official though he is not in point of law. 1 Wds. & Phr. (2 ser.) 1213. But de facto officers cannot invoke the aid of their own acts as de facto officers to promote their individual interests. 3 Fletcher, Cyc. Corp. § 1842; Shellenberger v. Patterson, 168 Pa. 30, 40, 31 A. 943; Waterman v. C. & I. R. Co. 139 Ill. 658, 29 N. E. 689, 15 L. R. A. 418; Schmidt v. Mitchell, 101 Ky. 570, 41 S. W. 929, 72 A. S. R. 427. Indeed the doctrine of de facto officers is applicable when third persons are involved and not in case of direct attack as is here involved. In re George Ringler & Co. 204 N. Y. 30, 97 N. E. 593, Ann. Cas. 1913C, 1036; Schmidt v. Mitchell, 101 Ky. 570, 41 S. W. 929, 72 A. S. R. 427; Moses v. Tompkins, 84 Ala. 613, 4 So. 763; Stratton Mass. G. M. Co. v. Davis, 222 Mass. 549, 11 N. E. 375; 3 Fletcher, Cyc. Corp. §§ 1833, 1845, 1850.

5. It is claimed that error occurred in the reception in evidence of declarations of A. H. Ranney, the president, tending to show that the opposing group owned the controlling stock. The objection is based upon the rule of Longman v. Anderson, 160 Minn. 15, 199 N. W. 742, and rests upon the claim that these statements were made in casual conversation and not in the scope of his agency

while transacting business for his principal, nor in relation to a transaction or matters then depending in which he was acting or called upon to act or speak. An examination of the record leads us to a contrary conclusion. This evidence was properly received.

6. Appellants' brief quotes authorities to the effect that equity will not grant relief to one who has neither done equity in the premises nor indicated his willingness to do it. It is said that a party cannot retain the benefits of the transaction and at the same time have a cancelation of the contract. These authorities arise from and are applicable to fraud cases. This is not a case of fraud. The stock was canceled because it came into existence without authority of law and through the instrumentality of those who hold it. The plaintiffs in the second action were not parties to the wrongful issuing of the illegal stock and were not benefited thereby. They should not in equity be called upon to do equity as a condition precedent to cancelation. 5 Fletcher, Cyc. Corp. § 3485 (63); Trask v. Chase, 107 Me. 137, 77 A. 698; Stebbins v. Perry County, 167 Ill. 567, 47 N. E. 1048.

A president of a corporation may employ counsel for the corporation. Traxler v. Minneapolis C. & L. Co. 128 Minn. 295, 150 N. W. 914. But we have not found any evidence in the voluminous record disclosing such employment. Whether the corporation actually owes for legal services we do not determine.

7. The court found the real estate of the corporation worth from $200,000 to $300,000 and that it had debts secured by mortgage of $145,000. Appellants claim the corporation has other debts as follows: S. E. Ranney, $6,500; A. H. Ranney, $60,000; Cecelia B. Ranney, $6,000; Belt Line Brick Co. et al. $12,000; others $20,000, amounting to $104,500, or a total indebtedness of $249,500, perhaps more. The court refused their motion to amend the findings determining the amount of the indebtedness. It is urged that this is a vital question in the case, upon the theory that if the corporation is in truth insolvent plaintiffs in the second action are not prejudiced and are not entitled to the extraordinary relief of cancelation. While courts of equity will not interfere with the action of

corporate officers as to acts within their powers and which involve an exercise of discretion committed to them, it will stay those acts which are in excess of authority or in violation of their trust. Minority stockholders may successfully prosecute such an action when usurpation or fraud is involved. 14A C. J. 84; Venner v. Southern Pac. Co. (C. C. A.) 279 F. 832; Hawes v. Oakland, 104 U. S. 450, 26 L. ed. 827; 6 Fletcher, Cyc. Corp. § 4065; Cook, Stockholders (2 ed.) § 684. But in this case we consider the matter the same as if the corporation is a party in both actions and its remedy at law cannot be considered as adequate.

The trial court must, when requested, find one way or the other upon material issues. Seitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293. But the corporation and its real stockholders being entitled to the redress which they seek in the second action, the finding sought in an effort to get a finding of insolvency is immaterial.

The record presents 74 assignments of error. We cannot discuss all of them. Most of them are subordinate to the ones we have discussed and all are controlled by what we have said.

Both orders are affirmed.