George G. Way et al.

v.

The American Grease Company et al.

The American Grease Company

v.

Peter C. Vogellus et al.

[Filed August 3d, 1900.]

1. Directors of a corporation which is fully organized and in the active conduct of its business, are bound to afford to existing stockholders an opportunity to subscribe for any new issue of shares of its capital stock, in proportion to their holdings, before disposing of such new shares in any other way.

2. Where it appears that directors disregard the above rule, and for the purpose of securing themselves in office and in control of the corporation, issue stock to their friends for but a small proportion of its par value, and in breach of the by-laws of the company, their conduct is a fraud upon the existing stockholders, and the company will, at their instance, be restrained from receiving votes at its meetings upon such fraudulently-issued stock, and the defendant holders from voting thereon.

On bill, answer and proofs.

*Mr. William T. Hilliard,* for George G. Way et al., complainants, and for Vogellus et al., defendants.

*Mr. Henry I. Budd, Jr.,* and *Mr. Joseph H. Brinton* (of the Philadelphia bar), for the American Grease Company.

Grey, V. C. (orally).

Cross-injunctions have been allowed in these causes, and they ought, if possible, to be disposed of speedily. The election of the officers of the corporation interested has been postponed for some months awaiting the determination of the questions in this

suit. Counsel on both sides have fully argued both causes, and they may, I think, be now determined with fairness to all.

The matters in dispute are presented in two bills of complaint. The first one, filed by George G. Way and others against the American Grease Company and others, defendants, for the purpose of restraining the holders from voting on shares of stock of the American Grease Company issued in two separate lots, one in August, 1899, and the other one in December, 1899. Way and others are the holders of a large part of the original issue of stock in the American Grease Company, and they allege that these two later issues were fraudulently made and unlawful as against them as *bona fide* stockholders in the company. The grounds upon which they base this charge are that the August issue, though authorized by the stockholders, was made by a meeting of the directors held without the notice required by the by-laws of the company; the December issue was unauthorized by the stockholders; and both issues were made without any contract or undertaking on the part of the recipients of the stock to pay par value into the treasury of the company for their stock, on the contrary the company received but $8 out of the $50 par of the stock issued. Both issues were made without affording any opportunity to complainant and other original stockholders of the company to take the new stock at the par value in preference to issuing it to strangers. At the time these issues were made, the company was fully organized and engaged in the active conduct of its business. A dispute had theretofore arisen as to its management, and Way and others, original holders of the stock, who then had a sufficient number of shares to control the company at the coming election, contend that these later irregularly issued shares of stock were so dealt with by the officers of the company that their friends and relatives might hold and use them for the purpose of keeping those officers in their places, and of preventing those who lawfully ought to control the company from having the privilege which the law gave to them as an incident to their holding of a majority of the stock. They ask that the election should be delayed, and that the two issues of stock made in August and December, 1899, should be declared to be void as

against them, and be directed to be given up and canceled. To that bill, answer was filed by the persons in the management of the company, who had done the acts complained of, not substantially denying that they had done the things charged, but justifying their conduct, and insisting that it was lawful and unchallengeable.

The second bill was filed by the American Grease Company (which was under the control and management of the defendants in the Way case), with one of the stockholders, named Swing, as co-complainant in his own behalf and on the behalf of the other stockholders, against Mr. Way and others, holders of the original issue of stock, and against Mr. Vogellus and other persons, to whom that stock was first issued, denying the validity of the original issue of stock because of a failure of the consideration on which it was issued, and of fraudulent conduct on the part of Mr. Vogellus, and praying that the original issue of stock might be declared void, and that it might be delivered up to the American Grease Company for cancellation. The defendants Way, Vogellus and others, holders of the original issue of stock, deny these charges, and on this issue was joined by the defendants Way, Vogellus and others, insisting that they were entitled to hold the original stock as valid, and to vote on it at the meeting of the company.

These two cases being thus at issue came to hearing, and inasmuch as the questions involved in each were such as to affect the dispositon of both cases, counsel agreed that they be heard together, the testimony taken to be related, so far as it was pertinent, to the issues raised in the several causes.

The question which both counsel recognize as the first to be disposed of in considering these causes, was whether or not the first or original issue of stock should be invalidated. If that issue of stock is void, then Messrs. Way and others, who are holders only of that issue of stock, have no *status* to impugn the validity of the second and third issues of stock, and so counsel have both considered, both admitted and both argued. The lawfulness of the first issue of stock is disputed, first, because it is claimed that the Butchers' Interstate, &c., Refining, &c., Company, which purported to convey certain patent-rights and also

its business to the American Grease Company as consideration
for that original issue of stock, was never lawfully incorporated,
and was therefore incapacitated to convey the patents, &c.;
second, that the agreement was to convey the full and entire
territory of the patents, when in fact the interest in ten named
states had previously been conveyed to another corporation, the
Universal Drier and Digester Company, and thirdly, that Mr.
Vogellus, who promoted the American Grease Company, falsely
and fraudulently represented that the company was receiving by
lawful conveyance full and perfect title to the whole territory
of the patents.

A considerable amount of evidence has been taken upon the
question of legality of the incorporation of the Butchers' Inter-
state Refining, &c., Company. Its regularity and sufficiency, if
properly challenged by a direct proceeding, appears to be some-
what questionable. The proceedings for its incorporation were
very irregular. Its certificate of incorporation was never filed
in the secretary of state's office, as required by sections 9 and 10
of the General Corporation act (*P. L. of 1896 p. 281*), under
which it was incorporated. But it was just as conclusively shown
that the association of these parties for the purpose of incorpora-
tion was in good faith; that they did in fact organize their
corporation; that they held themselves out to the world as in-
corporators, and entered upon the conduct of the business which,
as a corporation, they had undertaken to conduct. There was
much ignorance, carelessness and irregularity, but there was a
*bona fide* belief on the part of those acting that they had a right
to assume and carry on the business of a corporation according
to their certificate of incorporation which they had filed in the
Gloucester county clerk's office. Acting on this belief, the
Butchers' Interstate company dealt with the newly-formed com-
pany, the American Grease Company, and transferred to it the
patent-rights, and also an option on a place of business in
Philadelphia, which was afterwards the latter company's loca-
tion, and a current business of some little extent. The new
company, the American Grease Company, dealt with the
butchers', &c., company as a corporation. The new company's
stock was issued in purchase of the patents and business of the

older company, many members of the new company having been associated with the older one, and knowing of the reason and purposes of the arrangements made. So far as the irregularity of the incorporation of the butchers' company and its ability as a corporation to make a conveyance is disputed as a ground for the invalidation of the original issue of stock of the American Grease Company, I think the matter is within the ruling of *Vanneman* v. *Young, 23 Vr. 404,* where the court of errors held that the legality of an incorporation, because of deficiencies such as are here alleged, cannot be attacked by those who dealt with parties acting in good faith, as they believed, in a corporate capacity.

Upon the second objection, that there was fraud in the conveyance of the patent-rights from the butchers' company to the American Grease Company in that the territory of the ten named states had already been disposed of to another company. The testimony on this point is apparently quite conflicting, but when considered in all its parts, does not exhibit a case of fraudulent dealing. That the use of the patent in the ten states had been previously conveyed to the Universal Drier company is true, but in that company, Mr. Vogellus (who promoted both the Butchers' Interstate and the American Grease companies) was a majority stockholder and the heaviest creditor. The weight of the evidence shows that he made known to the projectors of the American Grease Company the fact that this interest in the patent in the ten states was held by the Universal Drier company; that he expected to get it back, and would use his power as stockholder and creditor of the latter company to accomplish this, and that when he did he would procure this additional territory under the patent to be transferred to the American Grease Company. It was under this knowledge and upon this understanding, that the latter company accepted the conveyance of the patents, and issued its original stock. Some ineffectual and ignorant efforts were made to obtain from the Universal Drier company a re-conveyance of the use of the patent in the territory of the ten states, but they only indicated a willingness to obtain the re-conveyance to be made, and not its accomplishment. . As the transaction was in good faith, the

parties being informed of the partially defective title, and having dealt with reference thereto, it cannot be said that there was either fraud or failure of consideration in the issue of the original stock to the appointees of the butchers' company, because the title to the ten states in the use of the patents was not perfected at and before that issue was made. This may yet be done as the parties intended it should.

As to the alleged fraudulent representations of Mr. Vogellus that the American Grease Company was receiving a conveyance of all the territory of the patents, the proof shows, as stated, that at and before the dealing the facts were by Vogellus made known to the parties, and they organized the new company and issued the new stock with the knowledge that the title to the patents in the territory of the ten states was not complete.

The original issue of stock of the American Grease Company held by the complainant Way and those associated with him, is valid. The bill of the American Grease Company against Vogellus and others, seeking to have this stock declared void, should be dismissed, with costs.

The cause in which George G. Way and others, holders of the original issue of stock of the American Grease Company are complainants, seeking to have the second and third issues declared fraudulent, is yet to be considered. These issues of stock have not been very vigorously defended by the counsel for the American Grease Company. Preceding the issue of August, 1899, differences had arisen as to the management of the American Grease Company between those who then held the majority of the stock of that company and the officers who were then in the management of the company. The stockholders had authorized a new issue of the stock to the number of five hundred shares. The directors of the company at a meeting held without giving the notice required by its by-laws, issued the stock. The third issue of five hundred shares, in December, 1899, was wholly unauthorized by the stockholders, and was the voluntary act of the directors of the company. In both these later issues of stock the directors sold the shares for very much less than their par value, so that the treasury of the company received but a small fraction of its due. They ignored the holders

of the original issue of stock in the distribution of the new issue, giving to the existing stockholders no opportunity to subscribe for the new stock in proportion to their holdings. The new stock, upon the favorable terms noted, was sold to the relatives and friends of the officers of the company. It requires but little inference to be satisfied that the purpose of the directors in putting out these two later issues of stock was to maintain themselves in their places in defiance of the existing opposing majority of the stockholders. The portion of the money realized from the sale of these two issues, being at the most but $8 out of $50 of the par value, the difference—$42—being retained from the company by the assent of the directors, as "commissions." The amount thus allowed 'as "commissions," is not shown ever to have been paid by anybody, either to the company's treasurer or to any broker or person aiding in the sale of the stock, and was plainly a mere pretence to get the control of the stock, and not a genuine brokerage charge.

At this time the company was fully organized, and had been for a considerable time with a full list of officers, &c., in the active conduct of its business. The directors' duty in issuing new shares was to afford to the existing stockholders an opportunity to take the proposed new issue in the proportion in which the shares were held by them. In many cases corporations are incorporated, capitalized and organized by stockholders upon expectations based upon the maintenance of control by the existing majority of the holders of the stock. The power of distributing a new issue does not lie at the mere choice of directors. It is not a perquisite which they may use for their private advantage. They may not overthrow or secure for themselves the control of the corporation by means of a new issue of stock. This is true, whether as to a part of the stock authorized by the original incorporation which remains untaken (*Reese* v. *Bank, 31 Pa. St. 78*), or as to stock issued after incorporation, on a subsequently authorized increase. *Gray* v. *Portland Bank, 3 Mass. 364,* The directors in the case under consideration wholly ignored the right of the existing stockholders to subscribe for the new issue, and issued the shares for a nominal price, as stated, to their selected friends, and thus sought to secure for themselves their continued control of the company.

The power of directors of corporations has, under the authority of the American decisions, been quite widely extended, but in my view cannot be held to sustain such transactions as are here under judgment. They show a clear case of fraud upon the rights of the existing stockholders, the successful prosecution of which this court will restrain.

The issues presented on these pleadings do not call for the ascertainment and adjustment of equities between the holders of the shares of stock issued upon these fraudulent contracts with the directors and the company. The only matter here considered is the right of the original *bona fide* shareholders against the later shareholders, who accepted these certificates knowing that they were issued far below their par value, and in aid of a scheme to retain control of the company against those who then and theretofore held the majority of the stock. They participated in the effort to deprive the majority stockholders of their rightful privilege. The only relief here necessary to be given is such restraint as will be sufficient to prevent the success of the fraudulent scheme.

I will advise a decree in the case of Way against the American Grease Company and others, that the issues of the stock of that company made in August and December, 1899, were as against the complainants, unlawful and fraudulent, and that the company be restrained from permitting any holder to vote upon them, and restraining any of the defendant holders from voting thereon, with costs against the defendants.