**T. W. ROWLAND and ALPHA HOLDING CORPORATION, a corporation organized and existing under the Laws of the State of Florida, et al., v. THE TIMES PUBLISHING COMPANY, a corporation organized and existing under the Laws of the State of Florida.**

35 So. (2nd) 399            January Term, 1948
May 7, 1948                     Division A
Rehearing denied May 31, 1948

*W. G. Ramseur, B. K. Roberts* and *Keen & O'Kelley,* for appellants.

*Bussey, Mann, Simmons & Fielding, Austin L. Richardson* and *Arthur R. Thompson,* for appellee.

CHAPMAN, J.:

The record in this case discloses that the Alpha Holding Corporation, on January 8, 1932, acquired a Master's Deed to certain described land situated in the City of St. Petersburg, Florida, on which was located a building known as the Hall

Office Building. The deed recites a consideration of $65,-000.00. The charter of the Alpha Holding Corporation authorized the issuance of 2,000 shares of common stock of the par value of $100.00, but all the stock never issued and a few shares were purchased from time to time with its funds and placed in the name of Alpha Holding Corporation. Paul Poynter, or his corporations, held 863 shares; some 494 were never issued until about January 17, 1946 and some 600 shares were sold to and owned largely by the tenants of Alpha Holding Corporation. These tenants for many years were elected officers and directors of Alpha Holding Corporation. The ownership of the several shares of stock in Alpha Holding Corporation became material only for the years 1945 and 1946.

Paul Poynter owned the stock of the Times Publishing Company, except a few shares, and in 1945 or 1946 did not enjoy good health and was advanced in years. Nelson Poynter son of Paul Poynter, in 1938 became identified with his father's business interests. As a witness he testified that he was the executive Vice-President of the Times Publishing Company, and the father, Paul Poynter, confirmed his son's testimony on this point. The Paul Poynter stock interest in Alpha Holding Corporation, in the early part of 1946, was assigned or transferred to the Times Publishing Company..

Nelson P. Poynter, in the latter part of 1945, listed for sale with a realtor of St. Petersburg the Hall Office Building for the sum of $200,000.00. The realtor interested Weil-Maas Company, of Tampa, operator of a department store, in the building, resulting in an agreement to purchase the building for the sum of $200,000.00, less a realtor's commission in the sum of $10,000.00 to the stockholders of Alpha Holding Corporation, thereby netting to them the sum of $190,000.00. The proposed purchaser contemplated the conversion of the office building into a department store and tenant stockholders of the office building would be dispossessed if the sale was consummated. An argument was made to the effect that if Weil-Mass Company acquired the building and opened a department store the advertisement account to the St. Petersburg Times would approximate $30,000.00 annually.

The directors of Alpha Holding Corporation challenged the

authority of Nelson Poynter to sell the office building and dispossess the tenants, and accordingly, they met with Paul Poynter and apprised him for the first time of the contemplated action of his son, Nelson Poynter. Paul Poynter expressed the view that the sale of the building was unwarranted and advised the directors to protect their interests. Nelson Poynter, by letter as Vice-President of the Times Publishing Company, requested T. W. Rowland to call a stockholders meeting for the purpose of removing the directors and electing new directors. T. W. Rowland declined to call a meeting of the stockholders and so advised Nelson Poynter. The Directors of Alpha shortly thereafter held a meeting and caused to be issued and delivered to R. F. Crego 325 shares of unissued stock of Alpha Holding Corporation at the sum of $105 per share. The 325 shares of stock of R. F. Crego, coupled with other shares of stock, constituted a majority of the stock of Alpha Holding Corporation and the issuance and sale thereof to Crego in effect made The Times Publishing Company a minority stockholder. The majority stockholders and directors, at a subsequent meeting, adopted a resolution canceling the commitment to sell the Hall Office Building for the sum of $200,000.00, and the 325 shares of stock owned by Crego voted for the resolution.

On February 5, 1946, The Times Publishing Company filed a suit in the Circuit Court of Pinellas County, Florida, against the directors of Alpha Holding Corporation and charged that they connived and conspired with R. F. Crego, a minority stockholder, to upset and destroy the then equality of outstanding stock in Alpha Holding Corporation for the purpose of obtaining control thereof and thereby prevent a possible sale of the Hall Office Building, and in furtherance of their common plan or scheme, on the 17th of January, 1946, unlawfully and without authority did sell and issue to R. F. Crego 325 shares of the common stock and R. F. Crego entered into an agreement with the minority stockholders to vote with them and to maintain the directors in office. That it was the lawful duty of the directors, acting in a fiduciary capacity for all the stockholders, to act in the utmost good faith and if the business policy of the corporation required a sale of any of its

unissued stock, then other stockholders of the corporation had, as a matter of law, a pre-emptive right to purchase their pro rata share thereof rather than to sell the same to an outsider. The prayer was for a cancellation of the sale of the stock to Crego and setting aside the several acts and doings of the stockholders aided by the vote of 325 shares of stock owned by Crego and by him unlawfully acquired.

The answer denied pertinent allegations of the bill of complaint and further alleged that Nelson Poynter only owned ten shares of stock in Alpha and was not authorized by his father to represent him in the sale of the Office Building; that the dispute and controversy were with the officers and directors on the one part and Nelson Poynter on the other, and the interest of Alpha had been uppermost in the minds of the officers and directors; that the answering defendants were willing to purchase the Office Building on a basis of $200,-000.00; that Noel Carol Corporation was able and willing to pay $250,000.00 for the Office Building. The defendants requested the taking of testimony and a conclusion of the court therefrom that the plaintiff was in court with unclean hands.

In an amendment to the amended answer the defendants alleged that Nelson Poynter was never authorized by the stockholders and directors to vote or control the stock in Alpha Holding Corporation; that he was not authorized to negotiate for a sale or to sell the Hall Office Building; that he was without authority from the directors to represent the Times Publishing Company or to vote the stock of Alpha Holding Corporation and because of this lack of authority on the part of Nelson Poynter there was no dispute within the Alpha Holding Corporation that could confer jurisdiction on a court of equity to grant the relief prayed. Considerable testimony was adduced by the respective parties and a decree entered below cancelling the 325 shares of stock of Alpha sold to R. F. Crego upon the theory that the issuance and sale thereof were unlawful. The defendants appealed.

It appears by the record that a motion for the entry of a decree favorable to the defendants below on various grounds was presented to the Chancellor and, after argument, was denied. On pages 819 and 820 there is an exchange of views be-

tween the Chancellor and counsel for the appellant as to the controlling question viz:

"THE COURT: Before you start your argument to this motion, I want to say to you again something that I said earlier in this proceeding. There isn't but one main question in this case. It isn't a question of whether the Hall Building should be sold to Weil-Maas or sold to Noel Carol Corporation or anybody else. It is simply this question: *Was this transfer of so-called unissued stock or trustees' stock made under such circumstances and conditions as to be invalid or illegal?* All these other questions which have arisen and which apparently a great many people seem to think the Court has before it, do not actually exist. The question of whether Mr. Poynter's idea of selling that building was wise or whether it was fair or unfair to the minority stockholders could easily be determined in a suit for that purpose but this suit is primarily for the purpose of determining whether the change of status of the plaintiff as a majority stockholder was legally accomplished. Everything goes from that. I just want you to keep that in mind. That is the real issue as I see it.

"MR. RAMSEUR: I believe there are three issues, if the Court please.

"THE COURT: There may be a dozen but I am talking about the real issue." (Emphasis supplied).

Counsel for appellants pose here for adjudication some seventeen questions but apparently the overshadowing one is the allegedly inequitable or unconscionable conduct of the plaintiff below, which precludes it from any right whatsoever for relief in a court of equity. The contention is presented under the familiar maxim of equity that "he who comes into a court of equity must come with clean hands." Presumably the basis of this argument centers largely around the following: (a) the activity of Nelson Poynter in listing for sale with a realtor the Hall Office Building at a time when he owned only a few shares of stock in Alpha Holding Corporation; (b) the agreement to sell same to a corporation having to let a contract for a newspaper advertisement valued at $30,000.00 annually; (c) the total disregard of the rights of the several tenants of the Hall Office Building; (d) the apparent losses to

the appellant stockholders in Alpha if the sale to Weil-Maas is consummated; (e) the abuse of the fiduciary relation in the sale of the office building for $200,000.00 to Weil-Maas when an existing bona fide offer in the sum of $250,000.00 is refused; (f) the denial of the rights of the minority stockholders to buy the office building for $200,000.00; (g) the minority stockholders, as represented by the appellants, are entitled, as a matter of law, to receive for the several shares of their stock compensation on the valuation of $250,000.00 and not be paid on a valuation of the proposed sale to Weil-Maas. Other arguments are made in support of the contention but the pertinent ones are listed supra from (a) to (g), inclusive. Our ruling in Quinn v. Phipps, 93 Fla. 805, 113 So. 419, and reaffirmed by us in Van Woy v. Willis, 153 Fla. 189, 14 So. (2nd) 185, has not been overlooked.

Section 612.26, F.S.A., in part, provides that, unless otherwise provided in the certificate of incorporation or amendments thereof, every stockholder of record of a corporation shall be entitled at each meeting of stockholders thereof and on each proposal presented at such meeting to one vote for each share of stock standing in his name on the books of the corporation . . . Section 612.20, F.S.A., in part, provides that unless otherwise provided in the certificate of incorporation or amendment thereof, every stockholder of a corporation shall upon the sale for cash of any new stock of such corporation of the same class as that he already holds, has the right to purchase his pro rata share of such stock at the price which it is offered to others, which price, in the case of stock having par value, may be in excess of par if the Board of Directors shall so determine.

Presented here is purely a question of corporate policy of the Alpha Holding Corporation. It was the view, during the year 1945 and prior years, of a majority of the stockholders that the Hall Office Building should be sold when the sum of $200,000.00 could be realized therefor. The majority of the stock was at the time owned by Paul Poynter or one of his corporations, and because of bad health and advanced years the management thereof was placed with the owner's son, Nelson Poynter. The opposite faction, or the view of the minor-

ity stockholders, was to the effect that the sum of $200,000.00 was an inadequate price; that a bona fide offer had been made for the Office Building in the sum of $250,000.00, and if the sum of $200,000.00 was to be accepted for the building, then minority stockholders should be given an opportunity to purchase the same. The board of directors was composed of minority stockholders. They adopted a resolution cancelling the agreement to sell the building upon the theory that they had the lawful power so to do.

The case of Luther v. Luther Company, 118 Wis. 112, 94 N.W. 69, 99 A.S.R. 977, involved unissued stock and about the same question as presented on this record. The directors as minority stockholders caused to be sold "unissued stock" of the corporation for the purpose of placing in friendly hands the power to vote the shares favorable to the corporate policy advocated by them and thereby render the opposite faction a minority group of stockholders in the corporation. The "unissued stock" was considered as subject to the control of the directors, like other property or assets of the corporation, and to sell at prices most favorable to all the stockholders of the corporation, in the honest exercise of the discretion and trust vested in them. Their duty with reference thereto is fiduciary; they are bound to act in the best of faith for all stockholders. To dispose of or manage property of the corporation to the end or for the purpose of giving to one part of the cestuis que trustent a benefit or advantage over, or at the expense of, another part, is a breach of duty, especially when the directors belong to the benefited class.

The court, in cancelling the transfer of the "unissued stock," in part said (text 99 A.S.R. 980-981):

"It cannot matter how this result is accomplished, nor what the form of the undue benefits conferred or acquired. The benefit to the one class or the injury to the other need not be pecuniary. While the ultimate purpose of most stock corporations is money profit, the right of proportionate voice and influence in selection of policy and method of accomplishing that result is most important to each shareholder. It is as fundamental and vital as the right of suffrage under a representative government. While a governmental act may not

take away from any class of citizens property or physical liberty, yet, if, contrary to the fundamental law of organization, it abates their suffrage, it would be held void. Each holder of a share of stock has the right that, by convincing the holders of a certain number of other shares, his policy of business be followed. Any invasion of that right is an injury to him which, from his point of view, may be greater than very considerable present money loss to the corporation. While this right must yield to a power over it given by the terms of the association, still he has the right to insist that such power shall be exercised for the purposes of the whole association. It is not so when exercised for the direct purpose of depriving him of his proportionate voice and influence. That is not a legitimate manner for those temporarily vested with power to perpetuate the policy which they favor. Nothing can be more fallacious in corporate or in popular government than the argument that because they honestly believe their policy right, and another dangerous, they may rightfully invade the field of the suffrage upon which policy rests, and disfranchise, in whole or in part, those who disagree with them . . . "

See Trask v. Chase, 107 Me. 137, 77 Atl. 698; L. E. Fosgate Co. v. Boston Market Terminal Co., 275 Mass. 99, 175 N.E. 86; Kullgreen v. Navy Gas & Supply Co., 110 Colo. 454, 135 Pac. (2nd) 1007; Glenn v. Kittanning Brewing Co., 259 Pa. 510, 103 Atl. 340; Way v. American Grease Co., 60 N.J. Eq. 263, 47 Atl. 44.

It is our conclusion that the legal rights of the appellants as minority stockholders in Alpha Holding Corporation with reference to the commitment for sale of the Hall Office Building to Weil-Maas for the sum of $200,000.00, as well as the appellants having as directors on file with them a bona fide offer to buy on the part of Noel Carol Corporation the Hall Office Building for the sum of $250,000.00, are questions not considered or adjudicated on this appeal but these questions are left open for subsequent consideration and adjudication.

Affirmed.

THOMAS, C. J., TERRELL and SEBRING, JJ., concur.